OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

QUESTIONS PROPOUNDED BY THE SENATE
IN AN ORDER PASSED APRIL 12, 1951
ANSWERED APRIL 20, 1951
SENATE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE
IN SENATE

April 12, 1951

To the Honorable Justices of the Supreme Judicial Court:

**Whereas,** it appears to the Senate of the Ninety-Fifth Legislature that the questions of law hereinafter pro-

pounded are important and that it is upon a solemn occasion, the following statement of facts and questions of law are herewith submitted:

## STATEMENT

There are pending before the Ninety-Fifth Legislature several tax bills any one of which, if enacted, would institute a program of taxation designed to provide revenue for the state government on a large scale. If any one of these bills is enacted it is also contemplated that the revenue produced will be such that state government could and should withdraw from taxation of real and personal property (the state levy upon valuation). For this purpose, the pending legislation makes provision for the repeal of the state tax levy so-called. Whether the new tax, if enacted, be a sales or income tax or both or combination of both, it is contemplated that the field of taxation wherein a levy upon valuation is imposed will be left to municipalities for the production of revenues to support and maintain municipal functions of government.

It is common knowledge that there are large areas of the state in which there are no organized municipal governments in which areas, commonly called the unorganized territory, it is necessary for the state to directly support and maintain governmental functions ordinarily the responsibility of local governments. One of the direct state responsibilities in the unorganized territories, there being no municipal government to provide therefor, is to provide for the support and maintenance of public schools. Attached hereto and made a part hereof is a copy of Legislative Document No. 562 entitled "An Act to Create the Maine School District," which, if enacted, purports to make provision for the support and maintenance of schools in the unorganized territory.

NOW, THEREFORE, BE IT ORDERED:

That the Justices of the Supreme Judicial Court are re-

quested to give to the Senate, according to the provisions of the Constitution on this behalf, their opinion on the following questions, to wit:

## Question 1.

If Legislative Document No. 562 were duly enacted, assuming the administrative district purporting to be created thereby were created by direct terms, would the same be constitutional?

## Question 2.

In view of the obvious purposes of Legislative Document No. 562, is it constitutional, if enacted, to assess a tax upon property in an unorganized township in the unorganized territory in which township there are no inhabitants?

A. Would such assessment in such territory be constitutional with respect to property in an unorganized township in which there are one or more inhabitants, but none of school age?

B. Are unorganized townships within the unorganized territory a basic factor in the assessment of taxes?

## Question 3.

Is it essential to the constitutionality of Legislative Document No. 562, if enacted into law, that it be submitted by referendum to the legal voters resident within such unorganized territory for acceptance or rejection?

## Question 4.

If the answer to Question 3 is in the affirmative, may existing facilities provided by the election laws be utilized for such referendum or will additional legislation be required?

In Senate Chamber, April 12, 1951

Read and Passed

(Signed) Chester T. Winslow,
Secretary

## NINETY-FIFTH LEGISLATURE

Legislative Document                                   No. 562

H. P. 1034      House of Representatives, February 9, 1951

Referred to the Committee on Taxation.   Sent up for concurrence and ordered printed.

HARVEY R. PEASE, Clerk

Presented by Mr. Sinclair of Pittsfield.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED FIFTY-ONE

### AN ACT to Create the Maine School District.

Be it enacted by the People of the State of Maine, as follows:

**Sec. 1.   R. S., c. 37, §§ 155-A - 155-E, additional.**   Chapter 37 of the revised statutes is hereby amended by adding thereto 5 new sections to be numbered 155-A to 155-E, inclusive, to read as follows:

### 'Maine School District

**Sec. 155-A.   Maine school district.**   The administrative district known as the Maine school district shall include all of the unorganized territory of the state, and any areas which may subsequently become a part of the unorganized territory.

**Sec. 155-B.   Assessment of tax.**   An annual tax of not over 7½ mills on the dollar shall be assessed upon all the property in the Maine school district, including rights in public reserved lots, 1½ mills to be expended under the direction of the state tax assessor for the purpose of property

appraisal within the district, and not over 6 mills to be used for schooling of children residing in said district. Such tax shall be paid on or before the 1st day of October, annually. The valuation as determined by the board of equalization, and set forth in the statement filed by it as provided by section 65 of chapter 14, shall be the basis for the computation and apportionment of the tax assessed. The state tax assessor shall determine, in accordance with the provisions of section 74-A of chapter 14, the amount of such taxes due from the owners of lands in each unorganized township and lot or parcel of land not included in any township and rights in public reserved lots, and such amounts shall be included in the statements referred to in section 77 of chapter 14. The tax assessed shall be valid, and all remedies herein provided shall be in full force if said property is described with reasonable accuracy whether the ownership thereof is correctly stated or not.

**Sec. 155-C. Determination of tax; certification to state tax assessor.** The commissioner of education shall before March 15, annually, make an estimate of the cost of schooling children residing in the Maine school district for the school year beginning the following July 1. Such amount shall not exceed an amount equivalent to a tax of 6 mills on the last state valuation of property in the unorganized territory, as determined by the board of equalization and set forth in the statement filed by it under the provisions of section 65 of chapter 14. The commissioner of education shall certify such amount to the state tax assessor not later than March 15, annually, following the making of such estimate.

**Sec. 155-D. Assessment and collection of tax.** The state tax assessor shall, not later than April 1 of the same year, make an assessment of the total amount certified together with 1½ mills on the dollar of valuation for property appraisal and shall determine the amount of tax due in ac-

cordance with the provisions of section 74-A of chapter 14 and include such amounts in the statement referred to in section 77 of chapter 14. The state tax assessor shall collect such taxes and deposit the receipts with the treasurer of state daily, and so much of the taxes so collected as were assessed for school purposes and so much as were assessed for appraisal purposes shall be credited on the books of the state to appropriate accounts. Payment and collection of such school district taxes shall be in accordance with the provisions of sections 77-A to 77-C, inclusive, of chapter 14.

**Sec. 155-E. Expenditure of funds by the commissioner of education.** The commissioner of education is hereby authorized to expend so much of the funds of the Maine school district as were assessed for school purposes for the cost of schooling of children residing within the Maine school district, in accordance with the provisions of this chapter. Any unexpended balance in such account shall be carried forward in the books of the state and shall not lapse.'

**Sec. 2. R. S., c. 14, § 93, amended.** The 1st paragraph of section 93 of chapter 14 of the revised statutes is hereby amended to read as follows:

'Each owner or person in charge or control of personal property such as would not be exempt from taxation if it were located in a city or town of this state, and not otherwise subject to taxation under existing laws of the state of Maine, which on the 1st day of April in each year is situated whether permanently or temporarily, within an unorganized township, shall, on or before the 1st day of May in each year, return to the state tax assessor a complete list of such property upon blanks furnished by said assessor; and such property shall be assessed by said state tax assessor for a just proportion of all **school district** and county taxes; but none of the property described in this section shall be included in the state valuation as made for unorganized townships.'

Sec. 3. R. S., c. 37, § 145, amended. Section 145 of chapter 37 of the revised statutes is hereby amended to read as follows:

'Sec. 145. State to cooperate with U. S. government for schooling of children on government reservation. Special arrangements may be made to provide elementary school privileges in cooperation with the United States government for a child or children residing with a parent or legal guardian at any light station, fog warning station, life-saving station or other place within a United States government reservation, from such appropriation as the legislature may provide for the purpose, and under such rules and regulations as may be made by the commissioner and approved by the governor and council.'

Sec. 4. R. S., c. 37, § 146, amended. Section 146 of chapter 37 of the revised statutes, as amended by section 7 of chapter 350 of the public laws of 1945, is hereby further amended to read as follows:

'Sec. 146. Appropriation for schools in unorganized territory; how used. Such amounts as are necessary to provide schooling for children residing in the unorganized territory shall be paid out of the funds of the Maine School District account. The commissioner is authorized to use such funds for any purpose in connection with the schooling of children in the unorganized territory of the state, including: teachers' salaries, board and traveling expenses; fuel and janitor service; tuition, board and transportation of elementary school pupils; secondary school tuition; textbooks, school apparatus and supplies; erection, equipment, repair and maintenance of schoolhouses and requisite buildings, all of which schoolhouses shall conform to the minimum requirements for school buildings as provided by section 21; lots for school buildings or leases thereof; services and expenses of agents and attendance officers, and clerical assistance; and any other expenses he may deem necessary.'

**Sec. 5. R. S., c. 37, § 148, repealed.** Section 148 of chapter 37 of the revised statutes, as amended by section 30 of chapter 41 and by section 8 of chapter 350, both of the public laws of 1945, is hereby repealed.

## ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

The undersigned Justices of the Supreme Judicial Court, in giving you their opinion upon the important questions of law propounded to them by the Senate Order passed April 12, 1951, as Section 3 of Article VI of the Constitution requires them to do, feel compelled to recognize, as their predecessors did on July 1, 1903, that the particular inquiries involve an issue of such inclusive scope that something more than a categorical answer is required. See *Opinion of the Justices*, 97 Me. 595, at 597. On that occasion the two questions asked were whether a proposed enactment, if it became a law, would violate the provisions · of (1) Section 8 of Article IX of the Constitution, or (2) any of the provisions thereof. The justices restated the more inclusive issue thus raised, as follows:

> "In levying a State tax, is the Legislature prohibited by the Constitution from fixing a higher rate of taxation upon lands outside of incorporated cities, towns and plantations than the rate * * * within such municipalities?"

They answered it affirmatively, relying on said Section 8, and advised that the proposed legislation was "contrary to the Constitution."

Reference to the "Statement" carried in the Preamble of the Senate Order, discloses that the Legislature contemplates the abandonment of the system of property taxation which has been the principal source of the State's revenues, or one of them, and substituting one which cannot be expected to produce any substantial yield in the unorganized

territory of the State. We cannot doubt that Question No. 1 involves a more fundamental and underlying one, which might be stated as follows:

"Has the Legislature any option, if it desires that the property in the unorganized territory of the State shall continue to contribute to the cost of government, or to the maintenance of schools, except to continue to tax all the property within the State, not exempt from taxation, at a uniform rate, according to its just value?"

Statements of Justices of this Court, not only in Opinions such as this but in decided cases, require a negative answer to that question. Two such statements were made in giving consideration to taxes imposed on the property in unorganized territory to provide a proportionate part of funds for the operation of schools elsewhere. In the first of them, *Opinion of the Justices*, 68 Me. 582, the constitutional validity of P. L., 1872, Chap. 43, imposing a mill tax for the support of schools, was declared. It was said of that legislation, that:

"All the property in the state is assessed * according to its valuation. All contribute thereto in proportion to their means."

In the second, *Sawyer* v. *Gilmore*, 109 Me. 169, a new school fund was established, through a similar tax, and a different system for the distribution of its yield was provided. In declaring the validity of that law Mr. Justice Cornish said that:

"The Legislature has the right * * * to impose an equal rate of taxation upon all the property in the State * * * for the purpose of distributing the proceeds * * * for common school purposes."

Each of the statements quoted above was grounded in the requirement of Section 8 of Article IX of the Constitution that all taxes upon real and personal property, until and unless the Legislature should provide especially for the tax-

ation of intangible personal property as therein authorized: "Shall be apportioned and assessed equally, according to the just value thereof."

Subject to the right to levy taxes for municipal and county purposes and to exceptions of the nature of those considered in *Hamilton* v. *Portland Pier Site District*, 120 Me. 15, and *Inhabitants of Sandy River Plantation* v. *Lewis and Maxcy*, 109 Me. 472 (Maine Forestry District Tax) permitting the assessment of special local taxes for special local purposes based upon local benefits, any and all taxes assessed upon real and personal property by the State must be assessed on all of the property in the State on an equal basis while that provision of the Constitution remains unchanged.

We answer Question No. 1 by saying that the proposed legislation would not be constitutional if enacted. This being true, on the fundamental ground stated, no good purpose would be served by considering the additional questions.

Dated at Portland, Maine, this twentieth day of April, 1951.

Respectfully submitted:

HAROLD H. MURCHIE

SIDNEY ST. F. THAXTER

RAYMOND FELLOWS

EDWARD F. MERRILL

WILLIAM B. NULTY

ROBERT B. WILLIAMSON