OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.

Supreme Judicial Court of Maine.

Question Propounded by the House in an Order Received March 2, 1978.

March 9, 1978.

## HOUSE ORDER PROPOUNDING QUESTION

WHEREAS, it appears to the House of Representatives of the 108th Legislature that the following is an important question of law and that the occasion is a solemn one; and

WHEREAS, it is the desire of the 108th Legislature to enact legislation which would allow equitable taxation of property in the unorganized territory; and

Whereas, the Uniform Property Tax has been repealed and this has resulted in a loss of General Fund revenues from the unorganized territory of approximately $3.6 million for fiscal year 1978;[1] and

WHEREAS, there is pending before the 108th Legislature appropriation bills that include recommendations regarding funding of services in the unorganized territory that must be enacted during the second regular session of the 108th Legislature; and

WHEREAS, the Legislature's Committee on Taxation investigated closely methods of taxation in the unorganized territory which would not violate the state or federal constitution (Exhibit A);[*] and

WHEREAS, resolution of questions relating to taxation of the unorganized territory must be resolved prior to approval of appropriations' legislation for fiscal year 1979; and

WHEREAS, the Committee on Taxation in its report to the Legislature concluded that L.D. 2159 (Exhibit B) offers a reasonable approach to the problem of equitable taxation in the unorganized territory; and

WHEREAS, the constitutionality of the provisions of L.D. 2159 has been questioned in light of the provisions of the Constitution of Maine, Article IX, Section 8; and

WHEREAS, it is important that the Legislature be informed as to the answers to

---

1. Assuming a Uniform Property Tax mill rate of .0115.

* Note of Reporter of Decisions: Exhibit A is not herein reproduced.

the important and serious question hereinafter raised; now, therefore, be it

ORDERED, that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House of Representatives, according to the provisions of the Constitution of Maine on its behalf, an opinion on the following question, to wit:

QUESTION:

Would L.D. 2159 (Exhibit B), if enacted into law, violate the provisions of the Constitution of Maine, Article IX, Section 8?

## EXHIBIT B

(EMERGENCY)
New Draft of: H. P. 2059, L. D. 2117
SECOND REGULAR SESSION

# ONE HUNDRED AND EIGHTH LEGISLATURE

Legislative Document                No. 2159

H. P. 2139          House of Representatives, February 27, 1978

Reported by Mrs. Post From the Committee on Taxation and Printed Under Joint Rules No. 2.

EDWIN H. PERT, Clerk

## STATE OF MAINE

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED SEVENTY-EIGHT

**AN ACT Relating to the Taxation of the Unorganized Territory.**

**Emergency preamble.** Whereas, Acts of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies; and

Whereas, the uniform property tax has been repealed and this has resulted in a loss of General Fund revenues from the unorganized territory of approximately $3,600,000 for fiscal year 1978, assuming a uniform property tax mill rate of .0115; and

Whereas, the legality of the other state property tax, the local and state government tax, has been questioned in an opinion of the Attorney General; and

Whereas, if the local and state government tax were no longer levied, the State would lose in General Fund revenues at least $4,100,000 for fiscal year 1978 alone; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

Sec. 1. 20 MRSA § 1461, sub-§ 4, as repealed and replaced by P&SL 1975, c. 147, § C, § 10, is repealed and the following enacted in its place:

4. Balances. Any unencumbered balance in the Unorganized Territory School Fund shall not lapse but shall be carried forward to the same fund for use in the next fiscal year.

Sec. 2. 36 MRSA § 451, sub-§ 1, as enacted by PL 1975, c. 660, § 5, is repealed.

Sec. 3. 36 MRSA c. 115 is enacted to read:

### CHAPTER 115
### UNORGANIZED TERRITORY EDUCATIONAL AND SERVICES TAX

§ 1601. Unorganized Territory Tax District

The Legislature hereby creates a tax district to be known as the Unorganized Territory Tax District. It shall include all of the unorganized territory of the State and any areas which may subsequently become a part thereof.

§ 1602. Annual tax

1. Annual levy of tax. A tax, to be known as the Unorganized Territory Educational and Services Tax, shall be levied each year upon all nonexempt real and personal property located in the Unorganized Territory Tax District on April 1st of each year. The State Tax Assessor shall fix the status of all taxpayers and of all such property as of that date.

2. Computation and determination of tax. The tax shall be computed and apportioned on the basis of the State Tax Assessor's determination of the value of that property.

3. Determination of original tax. The State Tax Assessor shall determine the amount of tax due from each taxpayer. He shall notify each taxpayer in writing, not later than June 30th. Interest shall accrue beginning October 1st.

4. Establishment of mill rate. The State Tax Assessor shall establish a mill rate, accurate to the nearest quarter of a mill, which is calculated to raise the municipal cost component amount certified to the State Tax Assessor in accordance with section 1604, subsection 2.

§ 1603. Definition of municipal cost component

For the purposes of this chapter, "municipal cost component" means the cost of funding services in the Unorganized Territory Tax District which would not be borne by the State if the Unorganized Territory Tax District were a municipality. The "municipal cost component" shall include, but not limited to:

A. The cost of education, as would be determined by the School Finance Act in Title 20 if the unorganized territory were a municipality;

B. The cost of all services the State funds in the unorganized territory that are funded locally by a municipality;

C. The cost of reimbursing any county an amount equal to the county tax rate applied to unorganized territory within its boundaries, in accordance with Title 30, section 254; and

D. The cost of reimbursement by the State for services a county provides to the unorganized territory in accordance with Title 23, Part 4, and Title, 30, chapter 5.

§ 1604. Rate of tax

1. Governor's report to the Legislature. The Governor shall submit to the Legislature, not later than January 5th of each year, a written report which shall include a list of all items, including services and reimbursements, for which a municipal cost component exists.

2. Legislative determination of municipal cost components. The Legislature shall consider the Governor's report and, not later than April 15th of each year, determine the municipal cost component for the current fiscal year. The Legislature shall promptly certify the amount to the State Tax Assessor.

§ 1605. Unorganized Territory Education and Services Fund

1. Fund established. The Legislature hereby creates the Unorganized Territory Education and Services Fund. The State Tax Assessor shall deposit in the fund all Unorganized Territory Educational and Services Tax moneys which he collects.

2. Expending moneys. The Governor is authorized and directed to expend as much of the moneys in the fund as is necessary to reimburse, every fiscal year, each department of the Executive Branch for the full amount of its municipal cost component expense.

3. Balance carried forward. Any unexpended balance shall not lapse but shall be carried forward to the same fund for the next fiscal year and shall be available for the purposes authorized by this chapter.

Emergency clause. In view of the emergency cited in the preamble, this Act shall take effect when approved.

## STATEMENT OF FACT

The Unorganized Territory Educational and Services Tax is a district tax. Its purpose is to recover from the unorganized territory the state's expenses attributable to providing governmental services and education therein. Briefly stated, the

unorganized territory is treated as if it were a municipality and the tax imposed is the equivalent of a local municipal property tax.

The Legislature shall determine the cost of providing governmental services and education to the unorganized territory. The State Tax Assessor shall establish a mill rate, each year, which is calculated to raise that sum. The State Tax Assessor shall collect the tax. The revenues shall be placed in a dedicated fund, the balance of which shall not lapse but shall carry forward for use in the next fiscal year.

---

## ANSWER OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

We, the undersigned Justices of the Supreme Judicial Court, have the honor to submit our answer to the question propounded by the House of Representatives on March 1, 1978. We do this under the provisions of Article VI, section 3 of the Constitution of Maine, having first satisfied ourselves that the question asked is an "important question of law" and is asked "upon [a] solemn occasion."

QUESTION: Would L.D. 2159 (Exhibit B), if enacted into law, violate the provisions of the Constitution of Maine, Article IX, Section 8?

ANSWER: We answer in the negative.

The House of Representatives has before it Legislative Document 2159 bearing the title "An Act Relating to the Taxation of the Unorganized Territory."

By its terms, if enacted, it would create a "tax district" to be known as the "Unorganized Territory Tax District." Such district would include "all of the unorganized territory of the State and any areas which may subsequently become a part thereof." The proposed legislation would authorize the annual levy of a tax "to be known as the Unorganized Territory Educational and Services Tax" upon all nonexempt real and personal property located in the Unorgan-

ized Territory Tax District. The proceeds of the tax would be used exclusively for the payment of what the act describes as "the municipal cost component" and would create an "Education and Services Fund." The "municipal cost component" is described by the act as "the cost of funding services in the Unorganized Territory Tax District which would not be borne by the State if the Unorganized Territory Tax District were a municipality." The definition continues:

" 'the municipal cost component' shall include, but not limited to:

"A. The cost of education, as would be determined by the School Finance Act in Title 20 if the unorganized territory were a municipality;

"B. The cost of all services the State funds in the unorganized territory that are funded locally by a municipality;

"C. The cost of reimbursing any county an amount equal to the county tax rate applied to unorganized territory within its boundaries, in accordance with Title 30, Section 254;[1] and

"D. The cost of reimbursement by the State for services a county provides to the unorganized territory in accordance with Title 23, Part 4, and Title 30, chapter 5."

The Constitution of Maine, article IX, section 8, provides in part that "[a]ll taxes upon real and personal estate, assessed by

---

1. Although we find no constitutional infirmity on the face of the proposed statute, we recognize that § 1603(C) may present a serious problem in application. Section 1603(C) in operation has the potential for producing unconstitutional inequality of treatment, within a single county, of property located within the tax district as compared with property outside the district. We presume that the county tax in each county could be separately assessed and collected so as to eliminate this possible infirmity from Legislative Document 2159.

authority of this State, shall be apportioned and assessed equally, according to the just value thereof . . . ." The Justices of this Court in commenting upon this provision of the Constitution said, quoting from *Pine Grove Township v. Talcott*, 86 U.S. (19 Wall.) 666, 675 (1873):

"All kinds of property must be taxed uniformly, or be entirely exempt. The uniformity must be coextensive with the territory to which the tax applies. If a state tax, it must be uniform throughout the state. If a county or city tax, it must be uniform throughout such county or city." *Opinion of the Justices*, 97 Me. 596, 598, 55 A. 827, 828 (1903).

■ There is no gainsaying that the Legislature may erect political divisions, other than cities and towns, for public purposes. *Kelley v. Brunswick School District*, 134 Me. 414, 418, 187 A. 703, 705 (1936).

The Legislature has by various statutes authorized cities and towns to raise money by taxation for the support of numerous municipal functions. *See* 30 M.R.S.A. §§ 5101–5108.

■ The proposed legislation would create an Unorganized Territory Tax District. Such district obviously requires municipal and educational services. The funding necessary to support such municipal services is one of the two purposes for which the tax is created.

The Unorganized Territory Tax District has none of the machinery customary in municipalities for raising the necessary funds to pay for such municipal services.

The proposed legislation, Legislative Document 2159, would use the tax assessing and collecting machinery of the State to act for and in behalf of the inhabitants of the Unorganized Territory Tax District in raising the funds by taxation to support the municipal services described in section 1603 of the proposed legislation. Likewise, the proposed legislation would authorize the

State to utilize its tax assessing and collecting machinery to raise the funds necessary to discharge the Unorganized Territory Tax District's obligation to "make suitable provision, at their own expense, for the support and maintenance of public schools," a duty the Legislature is mandated by article VIII, section 1 of the Constitution of Maine to impose.[2]

Legislative Document 2159, if enacted, by providing that the State, acting for and on behalf of the Unorganized Territory Tax District, assess and collect taxes in the district, for use only in the district to provide municipal and educational services, would not violate the provisions of article IX, section 8 of the Constitution of Maine. We reach this conclusion because to paraphrase language of the Court in *Sawyer v. Gilmore*, 109 Me. 169, 174, 83 A. 673, 675 (1912), the assessment is laid upon all property, both real and personal, throughout the tax district.

No property therein escapes.

No locality therein escapes.

All the property is to be assessed at its just valuation, and a uniform rate of taxation is laid upon all classes of property in the district.

While many of the features found in Legislative Document 2159 are the same as or similar to the proposed legislation which was the subject of the *Opinion of the Justices*, 146 Me. 239, 80 A.2d 421 (1951), the constitutional deficiency in the 1951 proposal is overcome by the definition of "municipal cost component" found in section 1603 of the proposed statute. In the act found constitutionally deficient in the *Opinion of the Justices*, 146 Me. 239, 80 A.2d 421, the unorganized territory would have been required to bear the *entire* cost of educational services therein, while organized municipalities would have received part of their cost

---

**2.** The State is thus in effect a trustee for the Unorganized Territory Tax District for purposes of raising moneys and expending them

for municipal and educational services within the District.

of education by state funding derived from general state taxation.

Respectfully submitted,
VINCENT L. McKUSICK
Chief Justice
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY
EDWARD S. GODFREY
DAVID A. NICHOLS
Associate Justices

