**AMERICAN REPUBLIC INSURANCE COMPANY,**

v.

**SUPERINTENDENT OF INSURANCE.**

Supreme Judicial Court of Maine.

Argued April 29, 1994.
Decided Sept. 21, 1994.

**1196**

Gordon H.S. Scott (orally), Eaton, Peabody, Bradford & Veague, P.A., Augusta, for plaintiff.

Susan A. Sparaco (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

ROBERTS, Justice.

The Superintendent of Insurance appeals from a judgment entered in the Superior Court (Kennebec County, *Chandler, J.*) vacating the Superintendent's decision and declaring 24–A M.R.S.A. § 2850(2) (Supp.1993) unconstitutional as applied to guaranteed renewable individual health insurance policies issued by American Republic Insurance Company before the statute's effective date. The Superintendent argues that retroactive application of section 2850(2) does not result in an unconstitutional impairment of contract.[1] Although American Republic may have suffered a substantial impairment of its contracts, section 2850(2) has a significant and legitimate public purpose, and the adjustment of the parties' rights and responsibilities are reasonable and of a character appropriate to that purpose. Accordingly, we find no constitutional infirmity and vacate the judgment.

American Republic is an Iowa corporation registered to do business and licensed to provide insurance in Maine. As part of its business in this state, the company issues guaranteed renewable health insurance policies to individuals whereby it must renew the policy for the life of the insured so long as the premiums are paid. Benefits may not be changed without the consent of the insured, and the premium may be changed only pursuant to a uniform schedule based on the insured's age or if the change applies to the entire class of policyholders to which the insured belongs.

In the past American Republic routinely excluded identified health conditions from coverage when it determined that an individual had a high level of risk for a particular condition. In 1990, however, the Legislature enacted 24–A M.R.S.A. § 2850(2), which prohibits insurers from including in individual health insurance policies

> a preexisting condition exclusion period of more than 6 months, except that the policy may exclude coverage for up to 24 months for any preexisting condition that, as of the effective date of the coverage, requires ongoing medical observation or treatment.

P.L.1989, ch. 867, § 8.[2] Section 2850(2) applies to all individual health insurance policies "executed, delivered, issued for delivery, or renewed" in Maine on or after December 1, 1990. P.L.1989, ch. 867, § 10. A policy was deemed to be renewed no later than the next yearly anniversary of the contract date. *Id.*

In September 1991, Herbert Wentworth of Corinth filed a complaint with the Bureau of Insurance, challenging American Republic's failure to remove a preexisting condition exclusion from his guaranteed renewable policy. The policy, which was issued in June 1988, excluded coverage for cataracts based on Wentworth's disclosure that his doctor had observed them developing in 1987. In

---

1. The United States Constitution provides that "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. Article I, section 11 of the Maine Declaration of Rights states that "The Legislature shall pass no ... law impairing the obligation of contracts."

2. The Legislature significantly amended section 2850(2) in 1993. *See* 24–A M.R.S.A. § 2850(2) (Supp.1993) (effective Dec. 1, 1993); P.L.1993, ch. 477, § A–15. All references to section 2850(2) in this opinion are to the provision in effect before the 1993 amendment.

response to Wentworth's complaint, the Bureau ordered American Republic to remove the exclusion.

American Republic requested a hearing before the Superintendent, seeking an exception from section 2850(2) for its guaranteed renewal policies. The Superintendent denied the request, concluding that even though section 2850(2) forced American Republic to pay for treatment of previously excluded conditions, there was no constitutional violation because the company could seek and obtain a premium increase.

American Republic sought judicial review in the Superior Court pursuant to M.R.Civ.P. 80C. The court concluded that American Republic's inability to cancel or refuse to renew Wentworth's policy resulted in increased contractual obligations. Rejecting the Superintendent's argument that the statute furthered the legitimate public purpose of broadening the availability of health care, the court vacated the Superintendent's decision. This timely appeal followed.

 On an appeal from the Superior Court's review of an administrative decision, we review the agency's decision directly for an abuse of discretion, errors of law, or findings unsupported by the evidence. *International Paper Co. v. Board of Envtl. Protection,* 629 A.2d 597, 599 (Me.1993). The construction of a statutory scheme is a question of law for the court. *Spiller v. State,* 627 A.2d 513, 515 (Me.1993). Legislative enactments are presumed constitutional, and the party challenging a statute's constitutionality bears the burden of proof to the contrary. *Id.*

### I.

 In order to determine if the application of a statute results in an unconstitutional impairment of a contract, the Supreme Court has developed a three-part test. The threshold question is whether the law "operate[s] as a substantial impairment of a contractual relationship." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 2722,

57 L.Ed.2d 727 (1978)). If so, the State must have "a significant and legitimate public purpose" for the regulation, such as remedying a broad, general social problem. *Id.* at 411-12, 103 S.Ct. at 704. In addition, the adjustment of the contracting parties' rights and responsibilities that results from the new law must be based on reasonable conditions and "of a character appropriate" to the purpose that justified its adoption. *Id.* at 412, 103 S.Ct. at 705 (quoting *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977)).

The question whether section 2850(2) operated as a substantial impairment of American Republic's contractual obligations has three components: (1) whether there was a contractual relationship; (2) whether the new law impaired that relationship; and (3) whether the impairment was substantial. *General Motors Corp. v. Romein,* —— U.S. ——, ——, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328, 337 (1992). The first two components are not in dispute, inasmuch as the Superintendent concedes that section 2850(2) increases American Republic's obligations under its guaranteed renewable policies. As to the third, the Superintendent contends that the degree of impairment is not substantial because of American Republic's ability to raise its premiums to compensate for higher costs, and because regulation in the health insurance field was foreseeable. We assume without deciding that in the case of American Republic's guaranteed renewable contracts the impairment is substantial.

### II.

 Despite the assumed substantial impairment, if section 2850(2) has "a significant and legitimate public purpose," it may yet survive constitutional scrutiny. *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704. We look to the plain language of a statute to discern "the real purpose of the legislation," *Fraser v. Barton,* 628 A.2d 146, 148 (Me. 1993) (quoting *Mahaney v. State,* 610 A.2d 738, 741 (Me.1992)), which in this case reveals an intent to improve access to adequate health care. Such a public purpose cannot be considered other than significant and legitimate, *see Calfarm Ins. Co. v. Deukmeji-*

**1198**

*an,* 48 Cal.3d 805, 258 Cal.Rptr. 161, 164, 176–78, 771 P.2d 1247, 1250, 1262–63 (1989). The Legislature has determined that requiring coverage for preexisting conditions will reduce the number of persons without coverage and increase the availability of medical treatment.

### III.

 The final step in the *Energy Reserves* analysis is to determine if the adjustment of contractual rights and responsibilities caused by section 2850(2) is based on reasonable conditions and is "of a character appropriate" to the purpose of broadening the availability of health care. 459 U.S. at 412, 103 S.Ct. at 705 (citation omitted). In reviewing economic and social legislation as provided by section 2850(2), we defer to the Legislature's judgment regarding the necessity for and reasonableness of the statute. *United States Trust Co.,* 431 U.S. at 22–23, 97 S.Ct. at 1517–18.

> Even in the absence of legislative findings, the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.

*Maine Milk Comm'n v. Cumberland Farms Northern, Inc.,* 160 Me. 366, 380, 205 A.2d 146, 153 (1964), *appeal dismissed,* 380 U.S. 521, 85 S.Ct. 1333, 14 L.Ed.2d 266 (1965).

 The Superintendent contends that section 2850(2) is based on reasonable conditions because it allows insurers to exclude preexisting conditions for limited periods and because it does not prohibit them from charging higher premiums to recover any losses. 24–A M.R.S.A. § 2850(2). We agree, although the ability to raise premiums is circumscribed by statute. *See* 24–A M.R.S.A. §§ 2736 to 2736–B (1990). *Cf. Calfarm,* 258 Cal.Rptr. at 176–77, 771 P.2d at 1262–63 (no constitutional infirmity in statute that required auto insurance renewal, but guaranteed insurers fair and reasonable rates). Moreover, section 2850(2) is designed

to achieve its goal of greater access to adequate health care. Allowing for the appropriate deference to legislative judgment, the means selected are "of a character appropriate" to the purpose behind section 2850(2), and accordingly, it does not violate the Contracts Clause of either the federal or the state constitution. *See Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 506, 107 S.Ct. 1232, 1253, 94 L.Ed.2d 472 (1987) (legislation requiring coal companies to repair mining damages or pay cost of repairs served public purpose of deterring mining operations that severely affected surface).

The entry is:

Judgment vacated.

Remanded for the entry of a judgment in favor of the Superintendent of Insurance.

All concurring.