**James McBREAIRTY, et al.**

v.

**COMMISSIONER OF ADMINIS-TRATIVE AND FINANCIAL SERVICES, et al.**

Supreme Judicial Court of Maine.

Argued June 6, 1995.

Decided Aug. 7, 1995.

---

---

Richard D. Solman (orally), Solman & Hunter, Caribou, for plaintiffs.

Andrew Ketterer, Atty. Gen., Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Plaintiffs James McBreairty, Donald Collins, Rene Lizotte, Allen Martin, Raymond Todd, and Carroll Kelley appeal from the summary judgment[1] entered in the Superior Court (Aroostook County, *Archibald, A.R.J.* ) in favor of the defendants, the Commissioner of Administrative and Financial Services, the State Tax Assessor, the State Treasurer, the State Auditor, the Commissioner of the Department of Conservation, and the Commissioner of the Department of Education. Plaintiffs own property in the unorganized territory and pay taxes pursuant to 36 M.R.S.A. §§ 1601–1610 (1990 & Supp.1994). They challenge certain property tax statutes applicable to the unorganized territory as violating either (1) the requirement that taxes be apportioned and assessed equally pursuant to Me. Const. art. IX, § 8,[2] or (2) the guarantee of equal protection provided by Me. Const. art. I, § 6–A.[3] Finding no error with the trial court's conclusion that the chal-

---

**1.** A summary judgment was entered on all counts of the plaintiffs' complaint, but they do not appeal the summary judgment entered on the count which sought to compel the State to prepare audits and financial reports pursuant to 36 M.R.S.A. §§ 1608, 1609 (1990).

**2.** In pertinent part, Article IX, Section 8 provides:

All taxes upon real and personal estate, assessed by authority of this State, shall be ap-portioned and assessed equally according to the just value thereof.

**3.** Me. Const. art. I, § 6–A provides:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof.

*See also* U.S. Const. amend. XIV.

lenged statutory provisions are not unconstitutional, we affirm the judgment.

36 M.R.S.A. §§ 1601–1610 (1990 & Supp. 1994), the Unorganized Territory Tax, creates a tax district containing all unorganized areas of the State (the District). *Id.* § 1601. Because the District "requires municipal and educational services" but has "none of the machinery customary in municipalities for raising the necessary funds to pay for such municipal services," *Opinion of the Justices,* 383 A.2d 648, 652 (Me.1978), the statute authorizes an annual property tax against property owners in the District.[4] 36 M.R.S.A. § 1602. The tax is collected by the State Tax Assessor and is deposited in the Unorganized Territory Education and Services Fund (the Fund). *Id.* §§ 1602, 1605(1). Money from the Fund is used to reimburse State agencies for their municipal cost component expenditures. Prior to receiving reimbursement for these expenses, each agency must submit an accounting of these expenditures to the Treasurer of State. *Id.* § 1605(2).

The "municipal cost component" is the amount of money required by State agencies to provide necessary public services in the District each year.[5] It includes, *inter alia,* the cost of education as would be determined pursuant to the School Finance Act if the District were a municipality, and the cost of services the State provides in the District that in other parts of the State are provided and funded locally by municipalities. *Id.* § 1603(1)(A)–(B). An example is the cost of land use planning, regulation, and enforcement services provided to the District by the Land Use Regulation Commission.

In order to raise municipal cost component revenues, the Assessor establishes a district-wide mill rate based on the total assessed value of all property in the District. *Id.* § 1602. In 1990 and 1991, a charge for accounting and personnel administration ser-

vices provided by State agencies to the District (state cost allocation charge) also was included in the calculation of the mill rate. *Id.* § 1602(4)(B–1). Individual property owners in the unorganized territory pay taxes calculated from the application of the mill rate to the assessed value of their particular property.

"Legislative enactments are presumed constitutional, and the party challenging a statute's constitutionality bears the burden of proof to the contrary." *American Republic Ins. Co. v. Superintendent of Ins.,* 647 A.2d 1195, 1197 (Me.1994). There must be a "clear showing by 'strong and convincing reasons' that [legislation] conflicts with the Constitution." *Opinion of the Justices,* 623 A.2d 1258, 1262 (Me.1993) (citation omitted). On appeal of the grant of a summary judgment, we examine "the evidence in the light most favorable to the nonprevailing party to determine whether the trial court committed an error of law." *Dubois v. City of Saco,* 645 A.2d 1125, 1127 (Me.1994). Because the parties agreed at oral argument that there were no material facts in dispute, we treat the case as though it was decided on an agreed statement of facts. *See Tondreau v. Sherwin–Williams Co.,* 638 A.2d 728, 730 (Me.1994) (summary judgment proper where parties do not dispute facts, only legal conclusions to be drawn).

## I. Education Subsidy

Plaintiffs first challenge the failure of the State to provide an education subsidy to the unorganized territory. Primary and secondary education in the unorganized territory is provided directly by the State through the Department of Education. The State's costs are reimbursed from the Fund. In other areas of the State, schools are operated by what are defined as school administrative

---

4. The question of the constitutionality of proposed legislation almost identical to this version of 36 M.R.S.A. §§ 1601–1610 was presented to the Justices in 1978. *See Opinion of the Justices,* 383 A.2d 648 (Me.1978). The Justices concluded that the constitutional requirement that property taxes be apportioned and assessed equally would not be violated by a statute providing for the State, acting on behalf of the District, to assess and collect taxes in the District, for use only in

the District to provide municipal and educational services. *Id.* at 652.

5. As defined in the statute, the municipal cost component is "the cost of funding services in the [District] which would not be borne by the State if the [District] were a municipality." 36 M.R.S.A. § 1603(1).

units [6] funded from local property taxes. Although municipalities are responsible for providing and funding education, *see* Me. Const. art. VIII, pt. 1, § 1,[7] the State contributes some money to these localities. Pursuant to the School Finance Act, the State provides each school administrative unit with a minimum of 5% of its education costs. 20-A M.R.S.A. § 15613(13) (1993). The money for the State's contribution comes from the State General Fund. The unorganized territory does not receive a similar subsidy. The plaintiffs argue that the failure of the State to provide the unorganized areas with the subsidy denies them equal protection within the meaning of Article I, Section 6-A. We do not agree.

■ Not all classifications that result in different treatment are constitutionally prohibited; the equal protection provisions of the Maine and United States Constitutions forbid only those discriminatory legislative classifications that are "arbitrary, unreasonable or irrational." *Lambert v. Wentworth*, 423 A.2d 527, 531 (Me.1980). Where the discrimination does not involve a fundamental right or an inherently suspect classification, we review an asserted equal protection violation pursuant to the "rational basis test, *i.e.*, the existence of a rational relation between the classification challenged and the intended goal of the legislation." *Id.; School Admin. Dist. No. 1 v. Commissioner, Dep't of Educ.*, 659 A.2d 854, 857 (Me.1995). For example, legislation which provides governmental benefits, such as tax exemptions, to some citizens and not to others does not

violate equal protection if there is a rational basis for the difference in treatment. *Lambert*, 423 A.2d at 531.

■ In this instance, the exclusion of the unorganized territory from the subsidy program to school administrative units is related to the fact that the unorganized territory receives a variety of additional school-related agency services from the State for which it is not charged.[8] The school administrative units, on the other hand, while receiving State education subsidies, do not have access to all of these State–provided services, and must therefore finance some of them themselves. The provision of a subsidy to the school administrative units is rationally related to the legislative goal of lessening the financial burdens associated with education on towns and municipalities. *See Town of Stonington v. Town of Deer Isle*, 403 A.2d 1181, 1185 (Me.1979). The failure of the State to provide an education subsidy to the unorganized territory is not violative of Article I, Section 6-A.

## II. Assessment for LURC Services

The Land Use Regulation Commission (LURC) is a State agency responsible for land use planning, regulation, and enforcement in the unorganized and deorganized areas of the State. 12 M.R.S.A. § 683 (1994); *Nattress v. Land Use Regulation Comm'n*, 600 A.2d 391, 393 (Me.1991). LURC currently provides planning services to 420 unorganized townships within the unorganized territory, and 33 plantations and 8

---

6. The definition of "school administrative unit" excludes schools operated by the State or pupils funded directly by the State. It is defined as a "municipal school unit, school administrative district, community school district or any other municipal or quasi-municipal corporation responsible for operating or constructing public schools." 20-A M.R.S.A. § 1(26) (Supp.1994).

7. In pertinent part, Me. Const. art. VIII, pt. 1, § 1 provides:

A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important object, the Legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision,

at their own expense, for the support and maintenance of public schools. . . .

8. These additional services include (1) advice and assistance from a number of divisions within the Department of Education (the Divisions of Instruction, School Facilities and Pupil Transportation, Special Services, Finance, Management Information, and Media Services); (2) advice and assistance from the Bureau of General Services of the Department of Administrative and Financial Services regarding the maintenance of buildings and the disposal of unneeded property; (3) advice and assistance from the Department of Transportation regarding roadway sanding and repair, removal of oil storage tanks, and title work; (4) media assistance from the Media State

organized townships outside of the unorganized territory.[9] It also administers and enforces the environmental laws that the Department of Environmental Protection administers and enforces in areas outside of LURC's jurisdiction.

90% of LURC's funding comes from the State General Fund; 10% of LURC's budget has been provided by the District since 1991. 12 M.R.S.A. §§ 685–D, 685–E. Even though some of LURC's services are performed in the organized areas of the State (9%), those organized areas receiving LURC services have not been assessed any additional amounts.

The plaintiffs contend that the assessment imposed against the District for LURC services violates Section 8 of Article IX because the tax is for services provided to both the unorganized and organized areas and property owners in the organized areas of the State are not similarly taxed. We are unpersuaded by that contention.

■ Article IX, Section 8 of the Maine Constitution requires that property taxes assessed by the State "be assessed on all of the property in the State on an equal basis." *Opinion of the Justices*, 146 Me. 239, 248, 80 A.2d 421 (1951). Nonetheless, the Legislature, may create separate tax districts and tax the districts differently, if the assessed taxes result in some special benefit to the taxed district. *Town of Stonington*, 403 A.2d at 1184–85 (doctrine of special purpose taxation permitted higher tax burden on Stonington property owners than on Deer Isle property owners because Town of Stonington and its residents enjoyed greater local benefit as a result of the taxation); *Opinion of the Justices*, 146 Me. at 248, 80 A.2d 421; *Crabtree v. Ayer*, 122 Me. 18, 22, 118 A. 790 (1922). As long as all property within a given district is assessed at a uniform rate, and the benefit from the tax is for a public purpose within the district, the constitutional requirement of "equality of taxation is not

violated even though the local rate prescribed by the Legislature in [one district] differs from that prescribed in [another district]." *Sawyer v. Gilmore*, 109 Me. 169, 186, 188, 83 A. 673 (1912); *see also Opinion of the Justices*, 383 A.2d at 652 (statute providing for assessment upon all property throughout tax district at its just valuation, and using a uniform rate of taxation, would be constitutional if enacted).

■ In this instance, 91% of the work performed by LURC takes place in the unorganized territory, and 10% of LURC's budget comes from the unorganized territory. As long as the tax revenues LURC receives from the District are used to fund its services in the unorganized areas, no constitutional violation occurs. The presumption of the constitutionality of the legislative enactment has not been overcome. *American Republic Ins. Co.*, 647 A.2d at 1197.

### III. Tree Growth Tax Reimbursement

The plaintiffs also contend that section 578 of the Tree Growth Tax Law, 36 M.R.S.A. §§ 571 to 584–A (1990 & Supp.1994), violates Article IX, Section 8. In order to encourage forest landowners to continue the forest use of their land, the statute allows all landowners to obtain reduced valuation rates, set by the State Tax Assessor, on their forest property. *Id.* §§ 572, 576. This lessens the owners' real estate taxes and results in the local taxing authority receiving less revenues than if the reduced valuation rates were not imposed. The State reimburses a "municipality actually levying and collecting municipal property taxes ... [for] 90% of the per acre tax revenue lost as a result [of the lowered valuation rates]." *Id.* § 578(1). The unorganized territory does not receive any reimbursement from the State.[10] *Id.* § 578(2).

■ The plaintiffs' contention that the tree growth tax violates Article IX, Section 8 is unpersuasive. Their argument concerns the *distribution of tax revenues*, not the

---

Library; and (5) advice and litigation services from the Department of the Attorney General.

9. LURC's jurisdiction also includes those areas that subsequently become an organized municipality or part of one until certain land use plans are adopted by the municipality. 12 M.R.S.A. § 685–A(4).

10. Taxes collected from forest landowners in the unorganized territory are deposited into the Unorganized Territory Education and Services Fund, as are the standard property taxes collected from residents of the unorganized territory. 36 M.R.S.A. §§ 578(2), 1605(1).

apportionment and assessment of taxes. Although Article IX, Section 8 requires equal assessment of property taxes, it does not apply to the manner in which the government chooses to spend tax revenues. There is no requirement that the Legislature distribute tax revenues equally, *see Opinion of the Justices*, 339 A.2d 492, 510 (Me.1975) (legislative scheme for distribution of revenues lies outside scope of Me. Const. art. IX, § 8), and the method of distribution is not a factor for us to scrutinize when we consider a tax statute's constitutionality. *Sawyer*, 109 Me. at 174–76, 83 A. 673. The failure of the State to provide forest land reimbursements to the unorganized territory does not violate Article IX, Section 8.

### IV. State Cost Allocation Charge

Finally, the plaintiffs argue that the state cost allocation charges for indirect services rendered to the District pursuant to 36 M.R.S.A. § 1602(4)(B–1) [11] were unconstitutional because they were not documented in accordance with 36 M.R.S.A. § 1605(2).[12] Contrary to the plaintiffs' contention, section 1605(2) does not apply to the Legislature. Section 1605(2) specifically applies only to State agencies seeking reimbursement for municipal cost component expenditures already made; it contains no reference to the Legislature.

The entry is:

Judgment affirmed.

All concurring.

---

**11.** In 1990 and 1991, in addition to the municipal cost component, costs for accounting and personnel administration services rendered to the unorganized territory were included in the mill rate calculation. 36 M.R.S.A. § 1602(4)(B–1), *repealed by* P.L.1991, ch. 622, § T–1 (effective Dec. 23, 1991). Pursuant to this section, the Legislature appropriated a total of $2,429,800 against the Fund for general department-wide functions paid from the State General Fund. This amount was transferred to the State General Fund to "help balance a shortfall in the State budget." No itemization or calculation was provided to or by the Legislature to document these amounts.

**12.** Section 1605(2) provides, in pertinent part, that:

[e]ach agency making disbursements for expenses attributable to the municipal cost component shall, by June 30th of each year, submit an accounting of all expenditures made for the fiscal year ending on that date to the Treasurer of State with a copy to the fiscal administrator of the unorganized territory. Upon receipt of the accounting, the Treasurer of State shall transfer from the fund sufficient money to pay the expenses attributable to the municipal cost component. . . .