STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-179

*[handwritten notation]*

CINERGY HEALTH, INC.,
    Petitioner,

v.

**ORDER ON FOAA
REQUEST BY CINERGY
HEALTH, INC.**

DEPARTMENT OF PROFESSIONAL
AND FINANCIAL REGULATION,
    Respondent.

Before the Court is Cinergy Health, Inc.'s appeal of the denial of access to public

records by the State of Maine, Department of Professional and Financial Regulation,

Bureau of Insurance pursuant to the Freedom of Access Act, 1 M.R.S.A. § 409(1).

## FACTS

Cinergy Health, Inc. (Cinergy) is a Florida health insurance corporation that does

business in the state of Maine. On July 14, 2010, staff at the Bureau of Insurance (the

Bureau) petitioned former insurance Superintendent Mila Kofman (Kofman) to undertake

adjudicatory proceedings against Cinergy and Guarantee Trust Life Insurance Company

to determine whether they had committed certain violations under Maine insurance law.

(Stipulated Facts ¶ 1, hereinafter "SF".) These proceedings were combined into a single

consolidated proceeding. (SF ¶ 2.) On October 5, 2010, Kofman issued a Notice of

1

Hearing to adjudicate the alleged violations, identifying herself as the hearing officer. (SF ¶ 3.) Prior to the hearing, Cinergy filed a motion for Kofman to recuse herself, based on its belief that she was biased against the company due to certain scholarship and advocacy she had undertaken in the past. (SF ¶ 4; Record 168, hereinafter "R".) Kofman denied the motion. (SF ¶ 5.)

At the two-day hearing on December 17 and 30, 2010, Kofman served as the neutral decision-maker, assisted by the Bureau's general counsel Robert Wake (Wake) and Assistant Attorney General Mark Randlett (Randlett). (SF ¶¶ 6-8.) Assistant Attorney General Andrew Black (AAG Black) represented Bureau staff in his prosecutorial capacity. (SF ¶ 9.) On April 26, 2011, Kofman issued a final decision finding insurance violations and issuing sanctions. (SF ¶ 13.) On May 31, 2011, Kofman denied Cinergy's motion for reconsideration. (SF ¶ 17.) The Bureau's decision constituted final agency action, which is the subject of a separate Rule 80C appeal pending in this Court. *Cinergy Health, Inc. v. Superintendent of Ins.*, Docket No. AP-11-37 (Me. Super. Ct., Ken. Cty.).

On May 17, 2011, Cinergy filed a FOAA request with the Bureau in order to uncover evidence of Kofman's possible bias or *ex parte* communications during the Cinergy proceedings. (SF ¶ 15; Br. of Pet. 1-2.) Cinergy requested, generally, communications from or to Kofman, Wake, and Randlett regarding the Cinergy proceedings. (SF ¶ 15; R. 1-2.) On June 22, 2011, the Bureau disclosed certain limited records, but denied the remainder of Cinergy's request on the following grounds: (1) attorney-client privilege, (2) the work product doctrine, (3) a so-called "mental processes" privilege, and (4) confidentiality under 24-A M.R.S.A. § 216. (SF ¶ 18; R. 4-

2

7.) On July 15, 2011, Cinergy moved for reconsideration of the denial and requested that the Bureau provide a "privilege log." (SF ¶ 20.) On August 1, 2011, the Bureau denied the reconsideration request but provided a privilege log listing approximately 235 separate email documents, many including attachments. (SF ¶ 21; R. 35-51.)

On August 9, 2011, Cinergy filed the present appeal in Superior Court. (SF ¶ 22.) Since then, the Bureau has disclosed a number of documents it previously withheld,[1] and it has provided an updated privilege log consisting of 169 communications plus a sealed portion consisting of 11 additional communications "with other regulatory agencies/jurisdictions." (R. 114-132.) On November 30, 2011, it provided hard copies of all the undisclosed documents from the privilege log for *in camera* review.[2] Having reviewed the documents, the Court will verify that they primarily consist of "legal decisions and rulings that [Kofman] faced during the Cinergy proceeding and for which she was seeking and obtaining advice from the attorneys assigned to assist her and in a few cases from Bureau employees with specialized knowledge." (Br. of Resp. 3-4.) In fact, the majority of the emails simply consist of redlined versions of the draft decision attached for review between Kofman, Randlett, and Wake. The remaining documents are "communications originating with other regulatory agencies and jurisdictions." (Br. of Resp. 4.)

---

[1] On August 30, 2011, the Bureau disclosed to Cinergy 67 of the documents from the original privilege log of August 1, 2011 that it had originally withheld. (SF ¶ 23.)

[2] *In camera* review is the proper mechanism to determine whether a document is appropriately treated as confidential. *Boyle v. Div. of Cmty. Servs.*, 592 A.2d 489, 491 (Me. 1991).

3

DISCUSSION

I.    *Maine's Freedom of Access Act*

Maine's Freedom of Access Act (FOAA) provides every person with the "right to inspect and copy any public record during the regular business hours of the agency or official having custody of the public record . . . ." 1 M.R.S.A. § 408(1). "Public record" means any "written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained . . . that is in the possession or custody of an agency or public official of this State or any of its political subdivisions . . . ." *Id.* § 402(3).

Excluded from the definition of "public records" are those records "that have been designated confidential by statute," *id.* § 402(3)(A), and those "that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if [they] were sought in the course of a court proceeding," *id.* § 402(3)(B). The Bureau in this case asserts that the requested documents are protected by attorney-client privilege and the work product doctrine (thus, exempt from disclosure under § 402(3)(B)), and under § 24-A M.R.S.A. § 216 (exempt under § 402(3)(A)).[3]

The Freedom of Access Act "shall be liberally construed and applied to promote its underlying purposes and policies." 1 M.R.S.A. § 401. A corollary to FOAA's liberal construction is that any exceptions will likewise be strictly construed. *Guy Gannett*

---

[3] The Bureau apparently dropped a fourth basis for non-disclosure, the "mental processes privilege," which appeared in its original denial. (R. 5.)

4

*Publ'g Co. v. Univ. of Maine*, 555 A.2d 470, 471 (Me. 1989) (citation omitted). The agency has the burden to prove "just and proper" cause for denying a FOAA request. 1 M.R.S.A. § 409(1); *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 9, 754 A.2d 353. The Superior Court reviews FOAA denials *de novo*, and shall enter an order for disclosure if it "determines such denial was not for just and proper cause." 1 M.R.S.A. § 409(1).

II.     *Attorney-client privilege does not excuse the Bureau of Insurance from producing documents relating to the Cinergy case that would otherwise be public records under FOAA.*

The general rule of attorney-client privilege confers a client with the right to "refuse to disclose and to prevent any other person from disclosing confidential communications" made in the course of legal representation between and amongst a client, his lawyer, and both their representatives. M.R. Evd. 502(b). The Maine Rules of Evidence specifically remove the attorney-client privilege as applied to a public officer or agency and its lawyers unless "the communications concern a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest." M.R. Evd. 502(d)(6). The purpose of Rule 502(d)(6) is clearly to limit protection under the traditional attorney-client privilege in the agency context: "[C]onfidential communications between a public agency and its lawyer are the exception rather than the rule." *Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197, 1203 (Me. 1989).

5

Instead of deliberating over whether the documents in question fit the narrow privilege envisioned under Rule 502(d)(6), it is enough to say that even the general attorney-client privilege cannot apply here due to the roles of the parties involved. As the label of the privilege suggests, communications must involve an attorney and a client to be protected by the attorney-client privilege. It is common in the administrative setting, however, for agency members to wear various hats at different times. During the relevant time period in this case, Kofman was acting squarely in her role as a quasi-judicial, neutral decision-maker. She was not acting as attorney for the Bureau, nor was the Bureau in the position of being her client. Protecting the requested documents under attorney-client privilege would be akin to protecting a judge's communications generated during the decision-making process. Clearly, that is not the purpose of the attorney-client privilege.

III.     *The work product doctrine does not excuse the Bureau of Insurance from producing documents relating to the Cinergy case that are otherwise public records under FOAA.*

The work product doctrine is contained in Maine's discovery rules:

> [A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials . . . the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

M.R. Civ. P. 26(b)(3). The purpose of the rule is to support the adversarial system by "protecting the confidentiality of papers prepared by or on behalf of attorneys in

6

anticipation of litigation." *Springfield Terminal*, 2000 ME 126, ¶ 18, 754 A.2d 353
(citation and quotation omitted). "Our adversary system depends on the effective
assistance of lawyers, fostered by the privacy of communications between lawyer and
client and the privacy in development of legal theories, opinions, and strategies for the
client." *Id.*

Here, the majority of the requested documents were not made "in anticipation of
litigation," but, rather, were generated after the hearing had taken place and in the course
of the panel's decision-making process. Additionally, as with the attorney-client
privilege, protection of documents as work product is meant to foster the "effective
assistance of *lawyers*." *Id.* (emphasis added). Thus, for the same reasons enumerated in
section III, *supra*, the Bureau's invocation of the work product doctrine is misplaced.[4]

IV.     *Title 24-A, section 216 of the Maine Revised Statutes excuses the Bureau of
         Insurance from producing documents relating to the Cinergy case that would
         otherwise be public records under FOAA.*

The Bureau's final argument is that the requested documents are excluded from

the definition of "public records" because they have been "designated confidential by

---

[4] The Court is not persuaded by the Bureau's argument that the exception applies because
"whenever the Superintendent or his legal advisors draft or edit a decision or order in a
disciplinary proceeding, they do so in reasonable anticipation that the subject of the
proceeding may appeal the decision and cause the Superintendent to become a party to
the appellate litigation." (Br. of Resp. 11.) This is creative but takes the work product
doctrine too far and disregards Kofman's actual role during the proceedings under
scrutiny. The Bureau also cites to *Carl L. Cutler Co., Inc. v. State Purchasing Agent* for
the general rule "forbidding inquiry into the mental processes of an administrative
decision-maker." 472 A.2d 913, 918 (Me. 1984). In that case, petitioner in an 80C appeal
was not permitted to take the administrative decision-maker's deposition to develop his
theory of bias. The case's reach and applicability is unclear (the Court notes that the
Bureau originally cited *Carl L. Cutler* in support of the so-called "mental processes"
privilege that it later dropped). Regardless, the court declines to apply *Carl L. Cutler* to
this set of facts, finding a FOAA request to be very different from a request for additional
discovery.

statute." 1 M.R.S.A. § 402(3)(A). The statute relied upon, 24-A M.R.S.A. § 216, reads in pertinent part:

> 2. All records of the bureau are subject to public inspection . . . except that <u>records, correspondence and reports of investigation in connection with actual or claimed violations of this Title or prosecution or disciplinary action for those violations are confidential</u>.
> . . .
> 5. . . . it is the duty of the superintendent to maintain as confidential a document or information received from the National Association of Insurance Commissioners, public officials of other jurisdiction, agencies of the Federal Government or political subdivisions or other agencies of this State, if the document or the information has been provided to the superintendent with notice that it is confidential under the laws of the jurisdiction that is the source of the document or information . . . This subsection does not alter prohibitions or restrictions applicable to ex parte contacts in the course of an adjudicatory proceeding in which a state agency is a party.

(Emphasis added).

The determination of whether § 216 protects the requested documents from disclosure is a matter of pure statutory construction. Cinergy contends that, the "exemption is confined to investigation-related records. The phrase 'of investigation' modifies 'records, correspondence and reports.'" (Reply Br. of Pet. 3). Because Kofman was in an adjudicatory rather than investigatory role, her correspondence regarding the Cinergy case would consequently not satisfy the exception's requirements. (Br. of Pet. 10.) The Bureau contends that the phrase "of investigation" does not relate back to the preceding three items contemplated by the statute. Instead, the statute should be read: "'[R]ecords [and] correspondence . . . in connection with . . . disciplinary action . . . are confidential.'" (Br. of Resp. 5.)

8

In construing a statute, the first place to look is the plain meaning of the language. *Johnson v. Smith*, 1999 ME 168, ¶ 6, 740 A.2d 579. The court aims to "avoid absurd, illogical, or inconsistent results." *Id.*

The Court finds that the plain, most logical meaning of § 216(2) *separately* renders confidential "records," "correspondence," and "reports of investigation," that are made "in connection with" the enumerated situations. "Correspondence . . . of investigation" does not make sense; "correspondence . . . in connection with actual or claimed violations . . . or disciplinary action" makes better grammatical sense and clearly protects the documents in question.

In *Doyle v. State*, Justice Brennan similarly read the term "correspondence" separately from "of investigation." 1997 Me. Super. LEXIS 133 (Apr. 22, 1997). In that case, an insurance agent charged with certain insurance violations requested access to the consumer complaint that formed the basis for the charges. *Id.* at *3. The Bureau denied his request on the ground that it was exempt from FOAA disclosure pursuant to § 216(2). *Id.* Upholding the denial, Justice Brennan wrote: "The plain language of § 216(2) reveals that 'correspondence . . . in connection with actual or claimed violations of [the Insurance Code] . . . shall be confidential.'" *Id.* at 6.

Given these considerations, the Court finds and concludes that § 216(2) very broadly limits the public's access to Bureau records generated in connection with alleged or actual insurance violations and related disciplinary action, without any requirement that such records directly relate to an investigation. This would include records generated by Bureau personnel acting in a quasi-judicial capacity,

like Kofman in this instance. This interpretation of § 216(2) makes sound policy sense, given the obvious problems that would arise if any member of the public were able to probe the records and correspondence of an administrative panel during the deliberative and drafting process.[5]

The *in camera* records in this case totaled 1,554 pages, with all but one being emails and email attachments. The vast majority of the communications were solely between Kofman, Wake, and Randlett, the bulk of which consist of numerous drafts passing back and forth in attachment form. Under the Court's reading of the statute above, these communications fall squarely within the confidentiality contemplated in § 216(2). A much more limited segment of the communications involved certain other Bureau personnel, who seemed to be involved administratively or by giving assistance.[6] There is no evidence, however, that Kofman, Wake, or Randlett had any *ex parte* communications with AAG Black or anyone working directly for him after the Cinergy proceedings

---

[5] At this time, there is no judicial, or quasi-judicial privilege in Maine. The Court would simply note that the policy basis for the so-called "deliberative privilege" in other jurisdictions seems quite sound. *See* Charles W. Sorenson, *Are Law Clerks Fair Game? Invading Judicial Confidentiality*, 43 VAL. U.L. REV. 1, 47-74 (2008) (discussing the "Judicial Deliberations Privilege" as adopted by a number of jurisdictions).

[6] The Bureau stated: "The email chain among Wake and several Bureau employees (Communications ## 34-41) involved a legal issue that arose during hearing that Wake was seeking clarification on from Bureau employees while drafting the post-hearing decision." (Br. of Resp. 9.) Cinergy seems to imply that these were *ex parte* communications due to a lack of "information as to whether those employees were also part of the advocacy team prosecuting the Bureau's case against Cinergy." (Reply Br. of Pet. 2.) "Any such advice should have been presented at the hearing, and the persons giving such advice should have been subject to cross-examination." *Id.* But because there has been no serious contention that these individuals were, in fact, affiliated with AAG Black during the proceedings the Court does not find disclosure necessary on those grounds.

commenced. Lastly, the final 13 pages of the record consist mostly of an exchange between Wake and numerous other individuals in various jurisdictions. and these fall within the coverage of § 216(5), protecting communications from other jurisdictions accompanied by the requisite confidentiality notice. Otherwise, these are covered by §216(2) in that they relate directly or indirectly to the Bureau's Cinergy investigation.[7]

The entry will be:

The Court DENIES Cinergy's FOAA request.

_12/16/11_

DATE

SUPERIOR COURT JUSTICE

---

[7] Note that all such contact happened before July 14, 2010, when Bureau staff petitioned Kofman to take action. Thus, these could not constitute *ex parte* contact.

CINERGY HEALTH INC - PLAINTIFF

Attorney for: CINERGY HEALTH INC
CHARLES DINGMAN  - RETAINED
PRETI FLAHERTY ET AL
45 MEMORIAL CIRCLE
PO BOX 1058
AUGUSTA ME 04332-1058


vs
DEPARTMENT OF PROFESSIONAL AND FINANCIAL - DEFENDANT

Attorney for: DEPARTMENT OF PROFESSIONAL AND FINANCIAL
ANDREW BLACK  - RETAINED
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2011-00179

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 08/09/2011

## Docket Events:

08/11/2011 FILING DOCUMENT - COMPLAINT FILED ON 08/09/2011

08/11/2011 Party(s):  CINERGY HEALTH INC
         ATTORNEY - RETAINED ENTERED ON 08/09/2011
         Plaintiff's Attorney: CHARLES DINGMAN

08/11/2011 Party(s):  DEPARTMENT OF PROFESSIONAL AND FINANCIAL
         ATTORNEY - RETAINED ENTERED ON 08/09/2011
         Defendant's Attorney: ANDREW BLACK

08/11/2011 MOTION - OTHER MOTION FILED ON 08/09/2011
         Plaintiff's Attorney:  CHARLES DINGMAN
         MOTION FOR EXPEDITED TRIAL DE NOVO, ENTRY OF PROPOSED SCHEDULING ORDER, AND ORDER
         SPECIFYING THE FUTURE COURSE OF PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW, SCHEDULING
         ORDER AND REQUEST FOR HEARING.

08/16/2011 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 08/16/2011
         M MICHAELA MURPHY , JUSTICE

08/25/2011 Party(s):  DEPARTMENT OF PROFESSIONAL AND FINANCIAL
         OTHER FILING - ENTRY OF APPEARANCE FILED ON 08/23/2011
         Defendant's Attorney: ANDREW BLACK

08/26/2011 ORDER - SCHEDULING ORDER ENTERED ON 08/26/2011
         M MICHAELA MURPHY , JUSTICE
         ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPY TO ATTY
         DINGMAN AND AAG BLACK

08/26/2011 CASE STATUS - CASE FILE LOCATION ON 08/26/2011
         W/ AP-11-31 AND AP-11-37

09/27/2011 Party(s): DEPARTMENT OF PROFESSIONAL AND FINANCIAL
OTHER FILING - STIPULATION FILED ON 09/23/2011
Defendant's Attorney: ANDREW BLACK
Plaintiff's Attorney: CHARLES DINGMAN
STIPULATED FACTS

09/27/2011 Party(s): DEPARTMENT OF PROFESSIONAL AND FINANCIAL
OTHER FILING - STIPULATION FILED ON 09/23/2011
Defendant's Attorney: ANDREW BLACK
Plaintiff's Attorney: CHARLES DINGMAN
STIPULATED RECORD

10/13/2011 Party(s): CINERGY HEALTH INC
OTHER FILING - OTHER DOCUMENT FILED ON 10/07/2011
Plaintiff's Attorney: CHARLES DINGMAN
BRIEF OF CINERGY HEALTH, INC.

10/21/2011 Party(s): DEPARTMENT OF PROFESSIONAL AND FINANCIAL
OTHER FILING - OTHER DOCUMENT FILED ON 10/21/2011
Defendant's Attorney: ANDREW BLACK
BRIEF OF RESPONDENT

11/02/2011 Party(s): CINERGY HEALTH INC
OTHER FILING - OTHER DOCUMENT FILED ON 10/28/2011
Plaintiff's Attorney: ANDREW LANDRY
REPLY OF CINERGY HEALTH, INC. IN SUPPORT OF REQUEST FOR PUBLIC RECORDS

12/01/2011 Party(s): DEPARTMENT OF PROFESSIONAL AND FINANCIAL
OTHER FILING - OTHER DOCUMENT FILED ON 11/30/2011
Defendant's Attorney: ANDREW BLACK
UNDER SEAL - COPIES OF COMMUNICATIONS AND ATTACHMENTS THAT WERE PREVIOUSLY PROVIDED ON
DISK.

12/19/2011 FINDING - JUDGMENT DETERMINATION ENTERED ON 12/16/2011
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.

12/19/2011 ORDER - COURT JUDGMENT ENTERED ON 12/16/2011
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  THE COURT
DENIES CINERGY'S FOAA REQUEST                          COPY TO ATTY DINGMAN, AAG
BLACK, AND ATTY THAXTER
Judgment entered for DEPARTMENT OF PROFESSIONAL AND FINANCIAL and against CINERGY HEALTH INC.

12/19/2011 FINDING - FINAL JUDGMENT CASE CLOSED ON 12/19/2011

12/20/2011 CASE STATUS - CASE FILE RETURNED ON 12/19/2011

01/06/2012 MOTION - OTHER MOTION MOOT ON 01/05/2012
M MICHAELA MURPHY , JUSTICE
MOTION FOR EXPEDITED TRIAL DE NOVO, ENTRY OF PROPOSED SCHEDULING ORDER, AND ORDER
SPECIFYING THE FUTURE COURSE OF PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW, SCHEDULING

ORDER AND REQUEST FOR HEARING.

01/24/2012 NOTE - OTHER CASE NOTE ENTERED ON 01/24/2012
NOTICE OF REMOVAL OF RECORD/EXHIBITS MAILED TO ATTY DINGMAN AND AAG BLACK

01/24/2012 ORDER - COURT JUDGMENT COPY TO REPOSITORIES ON 01/24/2012

A TRUE COPY
ATTEST:  _____
                    Clerk