1998 ME 246

Orlando E. DELOGU et al.[1]

v.

STATE of Maine et al.[2]

Supreme Judicial Court of Maine.

Argued Nov. 3, 1998.
Decided Nov. 23, 1998.

---

**1.** Plaintiffs are sixteen individuals who are residents and taxpayers of the State of Maine. Twelve of the plaintiffs are residents and taxpayers of the City of Bath. Orlando Delogu is a resident and taxpayer of the City of Portland.

**2.** Defendants are the State of Maine, Department of Administration & Finance, State Tax Assessor, Department of Economic & Community Development, City of Bath, and Bath Iron Works Corporation.

Orlando E. Delogu, pro se (orally), William J. Milliken, Andrew M. Braceras, Portland, for plaintiff.

Andrew Ketterer, Attorney General, Paul Stern, Deputy Atty. Gen. (orally), Augusta, for State defendants.

Roger R. Therriault (orally), Bath, for City of Bath.

Mark L. Haley (orally), Tracey G. Burton, Conley, Haley & Champion, Bath, for Bath Iron Works Corp.

Catherine R. Connors, Jonathan A. Block, Pierce Atwood, Portland, for Maine Chamber & Business Alliance, Maine Municipal Ass'n, Maine Pulp & Paper Ass'n; the Cities of Auburn, Brewer, Lewiston, Portland, South Portland and Saco; and 22 corporations or other business entities, amici curiae.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, Justice.

[¶ 1]   The plaintiffs appeal from the judgment entered for defendants, in the Superior Court (Kennebec County, *Studstrup, J.*), on plaintiffs' challenge to a three-part tax incentive package created to assist Bath Iron Works ("BIW") to modernize and expand its Bath shipyard facility.[3]   We affirm the judgment for defendants.

[¶ 2]   In early 1997, Bath Iron Works Corporation, a subsidiary of General Dynamics Corporation, approached the City Council of the City of Bath about participating in the expansion and modernization of BIW's shipyard facility.   At that time BIW used the "incline method" to construct ships which, BIW explained, created technical challenges and increased the costs of the shipbuilding process.   BIW proposed to increase its competitiveness by building a land-level facility adjacent to its existing facility and modernizing its shipyard.   BIW estimated that the project would cost approximately $597 million.

[¶ 3]   After considerable public discussion, the State, City, and BIW agreed upon and the Legislature approved a package consisting of three separate tax incentive programs with separate statutory bases.

[¶ 4]   First, the Legislature enacted the Shipbuilding Facility Credit Act to provide incentives to modernize and expand Maine shipyards.   P.L.1997, ch. 449, *codified as*, 36 M.R.S.A. §§ 6850–6858.   BIW qualifies for the shipbuilding facility credit because of its employment levels and proposed investment levels in the project.   This legislation allows BIW to retain up to $60 million of the employment taxes that it collects from its employees' wages over a twenty year period.

[¶ 5]   Second, BIW qualifies for a "business and equipment tax reimbursement," pursuant to 36 M.R.S.A. §§ 6651–6659 (1996 & Supp.1997).   The State will reimburse BIW for taxes that BIW pays to the City of Bath on certain business property.   The reimbursement would total approximately $53 million over a twelve year period.

[¶ 6]   Third, the City of Bath will use Municipal Tax Increment Financing ("TIF") to aid BIW.   30–A M.R.S.A. §§ 5251–5261 (1996 & Supp.1997).   Using a type of TIF known as a "credit enhancement" TIF, the City of Bath will return to BIW the amount of the increase in property taxes that BIW will pay if the expansion occurs.   The amount of return is calculated as the difference between a determined base property valuation and the increased property valuation resulting from the expansion improvements.   The agreement between the City of Bath and BIW provides that starting in 1999, the City of Bath will reimburse BIW a total of $85 million over a twenty-five year period.

[¶ 7]   Thus, the incentive package would contribute $198 million to the project over time, while guaranteeing some stability to employment and the property tax base in the City of Bath.

---

**3.**   The defendants cross-appeal the court's decision that the plaintiffs' challenge to the tax increment financing part of the tax incentive package is timely under Rule 80B of the Maine Rules of Civil Procedure.   We reach the merits of the appeal, as the complaint was timely filed within the period when a properly formulated complaint could have been drafted.

[¶ 8] On September 19, 1997, the plaintiffs brought this action challenging the constitutional and statutory validity of the three-part tax incentive program and seeking a declaratory judgment and injunctive relief. They alleged that (1) the use of public funds for this project would violate the public purpose requirement of Article IV, Part 3, Section 1 of the Maine Constitution, (2) the credit enhancement structure of the tax increment financing agreement violates the equal assessment requirement of Article IX, Section 8 of the Maine Constitution, and (3) the tax increment financing legislation ("TIF"), 30–A M.R.S.A. §§ 5251–5261 (1996 & Supp.1997), does not authorize credit enhancement tax increment financing agreements. The defendants objected that the TIF challenge was mounted too late, pursuant to Rule 80B of the Maine Rules of Civil Procedure.

[¶ 9] After a hearing on cross-motions for summary judgment, the Superior Court determined that plaintiffs had standing to challenge the TIF program; then, it entered judgment for the defendants.

## I. THE PUBLIC–PURPOSE DOCTRINE

[¶ 10] Article IV, part 3, section 1 of the Maine Constitution specifies that the Legislature "shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." We have interpreted this section to require that taxation and spending at either the state or local level be for a public purpose to be constitutionally valid. *Common Cause v. State*, 455 A.2d 1, 15 (Me.1983); *Crommett v. City of Portland*, 150 Me. 217, 230, 107 A.2d 841, 849 (1954).

[¶ 11] Although the courts determine whether a legislative action satisfies the public purpose doctrine, a legislative finding of public purpose is given great weight. *Common Cause*, 455 A.2d at 16; *Crommett*, 150 Me. at 231, 107 A.2d at 849. As we stated in *Common Cause*:

It is not for the Court to assess the wisdom or the efficacy [of the expenditures] as a matter of economic or fiscal policy ... If the project has a rational basis, we may not strike it down merely because, if we were acting in the role of voters or legislators, we would deem it unwise. (citations omitted).

*Common Cause*, 455 A.2d at 17; *see also id.* at 25 (stating a court should "invalidate expenditures only when the Legislature's decision has no rational basis"). A court must uphold expenditures unless a plaintiff clearly demonstrates that they are not constitutional. *Common Cause*, 455 A.2d at 17, 25.

[¶ 12] The State and the City of Bath approved this project to prevent the loss of economic benefits provided by BIW, minimize employment loss, promote economic development, and stabilize the local tax base. We have recognized that employment is one of the government's principal concerns, and that indirect economic benefits, such as job creation and retention, may qualify as valid public purposes. *Opinion of the Justices*, 601 A.2d 610, 619 (Me.1991) (indicating that direct payment of excise tax revenues to dairy producers had public purpose because it maintained employment levels that were essential to the dairy industry's survival); *Common Cause*, 455 A.2d at 24 (holding that increase of flow of commerce, enhancement of employment opportunities, and improvement of State's economy qualified as public purposes).

[¶ 13] Contrary to the plaintiffs' contention, the public purpose is not determined by the existence or lack of voter approval for a project, *Common Cause*, 455 A.2d at 16; public ownership of the facilities that are the subject of the project, *id.* at 19–21; or by the economic need of the recipient of the aid, *id.* at 19 n. 23.

[¶ 14] Further, while the plaintiffs' arguments may raise policy doubts about the effectiveness of the tax incentive package, they do not clearly demonstrate that the package is unreasonable, as a matter of law, as a means for achieving its stated purpose. There was extensive debate, both in the State Legislature and in the Bath City Council, concerning the benefits and costs of the project before the decisions were made to

assist BIW through tax incentives. The information that the State and the City of Bath considered includes information that: BIW is Maine's largest private employer and one of the major shipbuilders in the world; BIW's survival without modernization is uncertain; as many as 7,000 jobs and millions of dollars of State and municipal taxes would be lost if BIW does not modernize; the payroll for BIW operations for the next 20 years will be over $4 billion and generate $245–290 million in net Maine taxes; and the payroll from the new construction will be approximately $50 million and provide additional State tax revenues of $9 million. *See, e.g.*, Sen. Jour. 1395–1414 (118th Legis., 1st Spec.Sess.1997); House Jour. 23–49 (117th Legis.1997); Report of the Task Force on Tax Increment Financing (Jan. 31, 1996); Bath City Council Minutes of September 3, 1997.

[¶ 15] In addition, the Shipbuilding Facility Credit Act requires BIW to invest $200 million in the project over the next ten years and maintain an employment level of at least 3,500. 36 M.R.S.A. § 6851 (1997). The business and equipment tax reimbursement requires BIW to purchase the equipment and pay taxes. 36 M.R.S.A. §§ 6651–6659 (1989).

[¶ 16] The State and the City of Bath concluded that without assistance, BIW would close its facility, which would result in a substantial loss of jobs. They also concluded that with assistance, BIW would keep its facility operating, many jobs would be protected, the project construction would create additional employment opportunities, and the State and City would continue to receive the economic benefits brought by BIW. After considering all the facts of the record in this case, plaintiffs have not demonstrated, as a matter of law, that the legislative choice was irrational.

## II. THE CONSTITUTIONALITY OF THE CREDIT ENHANCEMENT TIF

██ [¶ 17] Article IX, section 8 of the Maine Constitution requires that "all taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Thus, all property taxes as-

sessed must be assessed on an equal basis. *McBrearity v. Commissioner of Admin. & Fin. Serv.*, 663 A.2d 50, 54 (Me.1995). The trial court held that the City of Bath's reimbursement to BIW of property taxes directly attributable to the project does not violate this requirement.

██ [¶ 18] BIW will be assessed and pay property taxes on equal terms with all other taxpayers in the City of Bath. The reimbursement to BIW is a distribution of tax revenues. A critical distinction exists between the assessment of taxes and the spending of tax revenues. As we held in *McBrearity*:

> Although Article IX, Section 8 requires equal assessment of property taxes, it does not apply to the manner in which the government chooses to spend its tax revenues. There is no requirement that the Legislature distribute tax revenues equally.

*McBrearity*, 663 A.2d at 55 (citation omitted). Consequently, the reimbursement of the taxes to BIW by the City of Bath does not violate article IX, section 8.

## III. STATUTORY AUTHORITY TO GRANT A CREDIT ENHANCEMENT TIF

[¶ 19] The structure of the TIF at issue in this case differs from the traditional TIF structure. Oftentimes a municipality provides the up-front financing for projects that it solicits, through bonds for example. The municipality then uses the increase in property taxes assessed as a result of the improvements ("tax increment") to repay the financing. In this case, the City of Bath structured a so-called, "credit enhancement" TIF. BIW will make the improvements and BIW will receive, by way of refund, a portion of the tax increment that the municipality collects from increased valuation of the improvements.

██ [¶ 20] The plaintiffs argue that the trial court erred by finding that the TIF enabling legislation, 30–A M.R.S.A. §§ 5251–5261 (1996 & Supp.1997), authorizes the use of a credit enhancement TIF.

■ [¶ 21] The Department of Economic and Community Development (DECD) has interpreted the TIF enabling legislation to allow the credit enhancement TIF. The DECD is the agency responsible for the administration of the TIF statute. 30 M.R.S.A. § 5253 (1996). This Court gives deference to construction of a statute by the agency responsible for its administration absent an indication of legislative intent to the contrary. *Berube v. Rust Eng'g*, 668 A.2d 875, 877 (Me.1995); *Porter v. Maine State Retirement Sys.*, 609 A.2d 1146, 1149 (Me.1992).

[¶ 22] The record before us includes other examples of TIF plans that include direct repayments to developers, rather than bond repayments to implement the program.

[¶ 23] Within TIF districts, section 5253, subsection 3 authorizes municipalities to "maintain or promote development intended to meet the objectives of the development program." 30–A M.R.S.A. § 5253(3) (1996). Nothing mandates the specific type of financing to be provided to accomplish the program objectives. Section 5254, subsection 3 addresses bond repayment financing "if a municipality has elected to retain all or a percentage of the retained captured assessed value...." 30–A M.R.S.A. § 5254(3) (1996). The necessary implication of "if" is that the municipality has a choice to retain funds to repay bonds or, as here, directly pay out the funds to reimburse the taxpayer for its investment.

[¶ 24] The Superior Court correctly determined that the TIF enabling legislation of 30–A M.R.S.A. §§ 5251–5261 permits the use of the credit enhancement TIF at issue in this case.

The entry is:

Judgment affirmed.