1999 ME 168

Gregory JOHNSON

v.

Heather SMITH, n/k/a
Heather Holliday.

Supreme Judicial Court of Maine.

Argued Nov. 2, 1999.

Decided Nov. 23, 1999.

David J. Van Baars, (orally), Neil S. Shankman, Shankman & Associates, Brunswick, for plaintiff.

Jennifer M. Bryant, Law Student, (orally), Geoffrey J. Parkin, Law Student, Amy E. Keck, Law Student, Valerie Stanfill, Jennifer Wriggins, Cumberland Legal Aid Clinic, University of Maine School of Law, Portland, for defendant.

Andrew Ketterer, Attorney General, James A. McKenna, Asst. Attorney General, Augusta, for amicus curiae Dept. of Human Services.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Heather Holliday appeals from the judgment of the Superior Court (Sagadahoc County, *Perkins, A.R.J.*), affirming the child support order of the District Court (West Bath, *Gorman, J.*), which imposes on Ms. Holliday a weekly child support obligation of $38.88 as the nonprimary care provider for her daughter, Olyvia Johnson. Ms. Holliday argues that the court's application of the child support guidelines to her case was erroneous (1) because her imputed income is below the federal poverty guideline and the award exceeds ten percent of her imputed annual income contrary to 19–A M.R.S.A. § 2006(5)(C); and (2) because application of the child support guidelines in her case causes a manifest injustice that requires a deviation from the support guidelines pursuant to 19–A M.R.S.A. § 2007(3)(Q). We affirm.

I. CASE HISTORY

[¶ 2] Heather Holliday is the mother of two girls. Her eldest, Raechel, resides with her. Her youngest, Olyvia, resides with Olyvia's father, Gregory Johnson. The dispute over Ms. Holliday's child support obligation for Olyvia stems from an action commenced by Gregory Johnson in 1996, to establish his paternity and his parental rights and responsibilities to Olyvia. Following a hearing on January 6, 1998, the District Court (West Bath, *Gorman, J.*) issued an order that established Mr. Johnson's paternity, provided for shared parental rights and responsibilities, and designated Mr. Johnson's home as Olyvia's primary residence.

[¶ 3] Because this living arrangement made Ms. Holliday the nonprimary care provider for Olyvia, the court issued a child support order in conjunction with its judgment. *See* 19–A M.R.S.A. §§ 2001(8) & 2006(4) (1998). For purposes of determining Ms. Holliday's appropriate weekly child support payment, the court imputed to Ms. Holliday an annual, minimum wage gross income of $10,400.[1] The court sub-

---

1. In her brief, Ms. Holliday states that "[t]he previous counsel for Appellant apparently did not object to the imputation of the income." She does not contest the imputation of income on appeal. The imputation of income is governed by 19–A M.R.S.A. § 2001(5)(D), which reads:

§ 2001. **Definitions**

As used in this chapter, unless the context otherwise indicates, the following terms have the following meanings.

. . . .

**5. Gross Income.** "Gross income" means gross income of a party as follows.

. . . .

**D.** Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity. In the absence of

tracted $1820 from this amount pursuant to 19–A M.R.S.A. § 2006(5)(A) as a credit for the support of Raechel. Applying Ms. Holliday's adjusted annual income of $8580 and Mr. Johnson's annual income of $27,-050 to the child support table, the court arrived at a basic weekly child support entitlement of $87 for Olyvia, to which was added $75 in weekly child care costs, for a total support obligation of $162. Ms. Holliday's proportional share of the total support obligation came to $38.88. *See* 19–A M.R.S.A. § 2006(1) & (3)(A)-(5); *see also* Me. Admin. Office of the Courts, Child Support Table (Mar.1997).

[¶ 4] Ms. Holliday requested findings of fact, but did not file any proposed findings with the court. *See* M.R. Civ. P. 52. The court denied Ms. Holliday's request for findings. On appeal, the Superior Court (Sagadahoc County, *Perkins, A.R.J.*) affirmed the judgment. Ms. Holliday filed a timely appeal to this Court.

## II. DISCUSSION

[¶ 5] When the Superior Court has presided as an intermediate appellate court, we review the District Court's judgment directly. *See Glew v. Glew,* 1999 ME 114, ¶ 5, 734 A.2d 676, 679. The judgment of the District Court will be affirmed ab-

sent clear error in the court's findings of fact or application of the law. *See Town of Union v. Strong,* 681 A.2d 14, 16 (Me. 1996).

[¶ 6] When construing a statute, our goal is to give effect to the Legislature's intent. We begin by looking to the plain meaning of the statutory language and construing it to avoid absurd, illogical, or inconsistent results. We consider related statutory provisions in our analysis in order to ensure a construction that is harmonious with the overall statutory scheme. *See Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). Finally, when the agency responsible for the administration of an ambiguous statutory section has adopted a particular construction, we will defer to that construction unless it is contrary to the legislative intent. *See Delogu v. State,* 1998 ME 246, ¶ 21, 720 A.2d 1153, 1157.

[¶ 7] Title 19–A M.R.S.A. § 2006(5)(C) provides that a court or hearing officer must take into consideration the subsistence needs of the nonprimary care provider when establishing a child support obligation. *See* 19–A M.R.S.A. § 2006(5)(C).[2] That section requires the court or hearing officer to reference the federal poverty

---

evidence in the record to the contrary, a party that is personally providing primary care for a child under the age of 3 years is deemed not available for employment. The court shall consider anticipated child care and other work-related expenses in determining whether to impute income, or how much income to impute, to a party providing primary care to a child between the ages of 3 and 12 years. A party who is incarcerated in a correctional or penal institution is deemed available only for employment that is available through such institutions.

....
19–A M.R.S.A. § 2001(5)(D) (1998).

2. 19–A M.R.S.A. § 2006(5)(C) (1998) provides:

**§ 2006. Support guidelines**

....
**5. Special circumstances.** The court or hearing officer shall consider the following

special circumstances in determining child support.

....

**C.** The subsistence needs of the nonprimary care provider must be taken into account when establishing the parental support obligation. If the annual gross income of a nonprimary care provider is less than the federal poverty guideline, or if the nonprimary care provider's income is insufficient to meet work-related expenses and other basic necessities as defined in Title 22, section 4301, subsection 1, that nonprimary care provider's weekly parental support obligation for each child for whom a support award is being established or modified may not exceed 10% of that nonprimary care provider's weekly gross income, regardless of the amount of the parties' combined annual gross income.

....
19–A M.R.S.A. § 2006(5)(C) (1998).

guideline[3] to determine whether the nonprimary care provider's annual gross income is less than the poverty threshold stated therein. *See id.* If the nonprimary care provider's income is beneath the federal poverty guideline, the court or hearing officer may not impose on that parent a child support obligation in excess of 10% of his or her weekly gross income. *See id.* Although the poverty measure contained in the federal poverty guideline is keyed to family size, section 2006(5) does not indicate whether the guideline applicable to a subsistence needs analysis is the guideline for one person or the guideline for the number of people currently comprising the nonprimary care provider's family. The child support guidelines do not define "family," nor do they indicate that the federal guideline's definition is to govern application of the federal poverty guideline to the child support guidelines.[4]

[¶ 8] Ms. Holliday argues that the language of section 2006(5)(C) is clear and that we are directed by the Legislature to apply the federal poverty guideline, including its definition of family.[5] Under this construction, Ms. Holliday and Raechel would make a family of two, and Ms. Holliday's annual imputed income of $10,400 would be less than either the 1997 or 1998 poverty guidelines of $10,610 and $10,850, respectively, for a two-person family. *See* 62 Fed.Reg. at 10,857; 63 Fed.Reg. at 9,236.

[¶ 9] Contrary to Ms. Holliday's contention, it is not clear that section 2006(5)(C) adopts the federal poverty guideline's definition of "family." Section 2006(5)(C) makes no reference to the family's needs. Rather, it is addressed to identify the "subsistence needs of the nonprimary care provider." *See* 19–A M.R.S.A. § 2006(5)(C). In this light, it makes sense to evaluate the nonprimary care provider's subsistence needs based on how his or her income correlates to the poverty guideline for one person.

[¶ 10] This conclusion is supported by recognition that use of the federal poverty guideline's definition of family in many section 2006(5)(C) analyses could give rise to absurd results. For example, the addition of a nondependent member to the nonprimary care provider's family, such as a wage earning spouse, could simultaneously enhance the nonprimary care provider's economic well-being and enable him or her to qualify for a subsistence needs special circumstance pursuant to 2006(5)(C) because family size has increased. This occurs because the determination of a subsistence needs special circumstance is keyed to the nonprimary care provider's personal income, not to the family's income. *See* 19–A M.R.S.A. § 2006(5). It would be illogical and inequitable for the nonprimary care provider's child support obligation to decrease at a time when that parent is benefitting from an improvement in his or her family's an-

---

**3.** The federal poverty guideline is "a simplified version of the [f]ederal [g]overnment's statistical poverty thresholds used by the [United States] Bureau of the Census to prepare its statistical estimates of the number of persons and families in poverty." 62 Fed. Reg. at 10,857. It is published annually by the United States Department of Health and Human Services and is generally used as an eligibility criterion for federal and state assistance programs. *See* 62 Fed.Reg. at 10,357–58. The federal poverty guideline provides graduated poverty thresholds based on family size. *See* 62 Fed.Reg. at 10,857.

**4.** The definitions section of the federal poverty guideline reveals the obvious fact that

"non-Federal organizations which use the poverty guidelines in non-Federally-funded activities may use administrative definitions that differ ...." 62 Fed.Reg. at 10,858.

**5.** The poverty guideline defines "family" as: "A family group of two or more persons related by birth, marriage, or adoption who live together; all such related persons are considered as members of one family. For instance, if an older married couple, their daughter and her husband and two children, and the older couple's nephew all lived in the same house or apartment, they would all be considered members of a single family." 62 Fed.Reg. at 10,358.

nual income, all on the ground that he or she cannot meet his or her subsistence needs.

[¶ 11] Ms. Holliday's proposed construction would cause certain other inconsistencies to arise as well. Related subsection 2006(5)(A) provides that the nonprimary care provider's income is to be adjusted downward for each dependent child in the household. *See* 19–A M.R.S.A. § 2006(5)(A). This adjustment is not available, however, when its effect would be to reduce an award previously established. *See id.* However, if the poverty guideline's definition of family were engrafted onto the child support guidelines, it would create an internal conflict between subsections (5)(A) and (5)(C) because in cases where a child is born into the nonprimary care provider's family, (5)(C) could authorize a downward modification of a pre-existing support order to 10% of that parent's annual income even though 5(A) specifically disallows an adjustment to his or her support obligation.

[¶ 12] The Department of Human Services, in an *amicus curiae* brief, notes that its child support enforcement manual provides that the weekly support obligation of a nonprimary care provider whose annual gross income is less than the federal poverty guideline "for one person" will be 10% of his or her weekly gross income for all children receiving a support award. *See* DEPARTMENT OF HUMAN SERVICES, MAINE CHILD SUPPORT ENFORCEMENT MANUAL ch. 7, 26 (1990). The Depart-

ment's interpretation supports the legislative intent that the federal poverty guideline for one person should serve as the touchstone for a section 2006(5)(C) subsistence needs analysis.

[¶ 13] Ms. Holliday secondarily contends that she is entitled to relief from the child support guidelines pursuant to 19–A M.R.S.A. § 2007(3)(Q)[6] because it was plainly unjust for the court to order someone in her predicament to make support payments for Olyvia when Olyvia's father makes $27,000 annually.

[¶ 14] Section 2007 provides that a "party in a court action proposing deviation from the application of the support guidelines shall provide the court with written proposed findings showing that the application of the presumptive amount would be inequitable or unjust." 19–A M.R.S.A. § 2007(2). This language makes the provision of written proposed findings mandatory if a party wishes the court to consider a section 2007(2) deviation. Because Ms. Holliday failed to provide the court with such proposed findings, we do not reach the merits of this argument. Instead, we presume that it was within the trial court's discretion not to deviate from the support guidelines because we have no record to suggest otherwise.

The entry is:

Judgment affirmed.

---

6.  19–A M.R.S.A. § 2007 provides, in pertinent part:

**§ 2007. Deviation from child support guidelines**
   1.  **Rebutting presumption.** If the court or hearing officer finds that a child support order based on the support guidelines would be inequitable or unjust due to one or more of the considerations listed under subsection 3, that finding is sufficient to rebut the presumption established in section 2005.
   2.  **Proposed findings.** A party in a court action proposing deviation from the appli-

cation of the support guidelines shall provide the court with written proposed findings showing that the application of the presumptive amount would be inequitable or unjust.
   3.  **Criteria for deviating from support guidelines.** Criteria that may justify deviation from the support guidelines are as follows:
   . . . .
   **Q.** A finding by the court or hearing officer that the application of the support guidelines would be unjust, inappropriate or not in the child's best interest.
19–A M.R.S.A. § 2007(1), (2) & (3)(Q) (1998).