STATE OF MAINE                     BUSINESS AND CONSUMER COURT
Cumberland, ss                     DOCKET NO. CV-20-03


THE INHABITANTS OF THE TOWN
OF CAMBRIDGE, AND TEN OR MORE
TAXABLE INHABITANTS OF HOSPITAL
ADMINISTRATIVE DISTRICT NO. 4,

      Plaintiffs

                            **COMBINED ORDER ON
MOTIONS**

v.

HOSPITAL ADMINISTRATIVE DISTRICT
NO. 4; ONE OR MORE JANE DOE(S)
AND/OR JOHN DOE(S); EASTERN MAINE
HEALTHCARE SYSTEMS; THE STATE OF
MAINE; AND JEANNE M. LAMBREW, IN HER
CAPACITY AS COMMISSIONER OF THE
DEPARTMENT OF HEALTH AND HUMAN
SERVICES

      Defendants


Before the Court are three motions to dismiss brought pursuant to Rule 12(b)(6), one special motion to dismiss filed pursuant to Maine's Anti-Slapp statute 14 M.R.S. § 556, and one motion for disclosure. The Plaintiffs[1] are represented by Attorneys Beth Seaney and Gerald Nessmann. Defendant Hospital Administrative District No. 4 is represented by Attorneys Tim Norton and Jason Rice. Defendant Eastern Maine Healthcare Systems is represented by Attorneys John Aromando and Sara Murphy. Defendants Commissioner Jeanne Lambrew and the State of Maine are represented by Assistant Attorney General Jonathan Bolton. Each of these defendants has filed a 12(b)(6) motion to

---

[1] In addition to the Inhabitants of the Town of Cambridge there are also thirty-three individual plaintiffs who claim standing as taxpayers.

1

dismiss. The special motion to dismiss was filed by Hospital Administrative District No. 4. In addition to these defendants, the complaint also names "one or more Jane Doe(s) or John Doe(s)" as defendants. The Plaintiffs filed the motion for disclosure.

**BACKGROUND**

The following facts are taken from Plaintiffs' complaint as well as exhibits attached to the complaint. In 1973 the Maine Legislature enacted special and private legislation (the "Charter") which established Hospital Administrative District # 4 ("HAD4" or "the District"). (Compl. ¶ 41 & Ex. 1); P. & S.L. 1973, ch. 76. HAD4 is composed of the following communities: Abbot, Atkinson, Bradford, Cambridge, Dexter, Dover-Foxcroft, Guilford, Milo, Monson, Parkman, Sangerville, Sebec, and Willimantic (the "Member Communities"). (Compl. ¶ 43.) Each of the member communities elects from one to three directors who serve on HAD4's governing Board of Directors (the "Board"). (Compl. ¶ 49.) The Board consists of a total of nineteen Directors. (Compl. ¶ 49.)

As enacted in 1973, the Charter provided that "[t]he district may be dissolved only if all member towns and plantations agree to dissolve it by vote at legally constituted town or plantation meetings in said such towns or plantations. If the hospital district has any outstanding indebtedness, it may not be dissolved." (Compl. ¶ 47 & Ex. 1.)

In 2016, the District entered into a preliminary affiliation agreement with Eastern Maine Health Services ("EMHS"). (Compl. ¶ 51.) A subsequent affiliation agreement was entered into in late 2017 which contemplated the parties entering into a merger agreement at a future date. (Compl. ¶ 53.) District administrators and the District's corporate counsel instructed the Board members to keep the details of the merger agreement confidential. (Compl. ¶¶ 52, 61.) In Late 2018, members of the Board and District administrators began

2

making and executing "important decisions" without bringing matters before the Board for a full vote. (Compl. ¶ 70.) These decisions included retaining a consultant, retaining new Board counsel, and meeting with State Legislators. (Compl. ¶ 71, 75, 76, 77.) Additionally, unknown parties retained a public relations firm for the purposes of "selling" the merger. (Compl. ¶ 81.) On February 27, 2019, the Board voted 15-3 in favor of approving what is known as the Second Merger Agreement.2 (Compl. ¶ 84.) The EMHS board approved the merger agreement on March 20, 2019. (Compl. ¶ 89.)

Following the vote, the District held informational meetings in four of the Member Towns. (Compl. ¶ 91.) District representatives told voters that taxes would be levied on the Member Town inhabitants if the merger was not approved. (Compl. ¶¶ 87, 92.) The voters were not told that the District had reserve funds which were fifteen times the amount of the revenue to be collected from the proposed taxes. (Compl. ¶ 88, 93.)

In April 2019, the Maine Legislature enacted emergency legislation instructing the Member Towns to hold non-binding advisory votes on the Second Merger Agreement. (Compl. ¶¶, 94-95.) Twelve of the Thirteen Member Towns subsequently voted in favor of the Merger. (Compl. ¶ 101.) Prior to the vote the District and one or more unknown individuals spent public money to influence the public to vote in favor of the merger. (Compl. ¶¶ 87, 98.) This included purchasing advertising material including buttons, handbills, a website, and Facebook advertising. (Compl. ¶ 99.) In June 2019, the Legislature enacted emergency legislation authorizing the District to merge into MRH

---

2 A first merger agreement had apparently been negotiated by the District and EMHS. The Complaint does not allege that the Board ever voted on the First Agreement. The complaint does allege that a vote had been scheduled for October 2018 but that the vote was enjoined by the Superior Court after one of the Board Members, Gerald Nessmann, filed a FOAA Complaint.

Corp.3 (Compl. ¶¶ 104, 106 & Ex. 6.) The legislation provided that on the effective date of the merger all property, debts and interests belonging to the District would be transferred to MRH Corp. (Compl. Ex. 6.) The Merger was to take effect after a number of conditions had been satisfied. (Compl. Ex. 6.)

On December 19, 2019, Plaintiffs filed their complaint alleging Twelve claims for relief.4 Counts I through IV as well as Counts IX and X all seek a declaratory judgment that P. & S.L. 2019, ch. 14 ("the Merger Legislation") violates various provisions of the Maine and United States Constitutions. Count V seeks a declaratory judgment that the District Board acted beyond its legal power by voting to enter into the second merger agreement with EMHS. Count VI and VII seek a declaratory judgment that the only method of terminating the existence of HAD4 was pursuant to the 1973 Charter. Count VIII seeks a declaratory judgment that one or more persons expended public funds to promote a partisan position and that these persons should be personally liable for the expenditures. Counts XII and XIII seek a temporary restraining order and a preliminary injunction.

In their opposition to the District's motion to dismiss, the Plaintiffs clarify that Counts III, V, VI, VII, IX, XII and XIII are brought by the Town of Cambridge while Counts I, II, IV, VIII, IX, X, XII and XIII are brought by the Taxpayers. Thus, the only counts pursued by both Plaintiffs are counts IX, XII and XIII.

## HAD4'S SPECIAL MOTION TO DISMISS

Maine's Anti-Slapp law provides that:

---

3 MRH Corp is EMHS parent organization.
4 The counts are numbered I through X and XII and XIII; there is no Count XI.

4

> [w]hen a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556.

The Law Court has established a three-part test for reviewing special motions to dismiss. In the first step, the moving party, here HAD4, bears the initial burden to show that the claims against it are based solely on its exercise of the right to petition pursuant to the federal or state constitutions. *Gaudette v. Davis*, 2017 ME 86, ¶ 16, 160 A.3d 1190; *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 22 n.9, 41 A.3d 551. The claims sought to be dismissed must "have no substantial basis other than or in addition to the petitioning activities." *Nader*, 2012 ME 57, ¶ 22 n.9, 41 A.3d 551. Whether the defendant's actions constitute protected petitioning activity is a question of law. *Gaudette*, 2017 ME 86, ¶ 16, 160 A.3d 1190. If the defendant does not establish that his complained of actions constitute petitioning activities, then the court must deny the special motion to dismiss. *Id*.

Section 556 defines the exercise of the right to petition as:

Any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any statement falling within the constitutional protection of the right to petition government.

5

14 M.R.S. § 556.

The District has made a persuasive case that the Plaintiffs' claims are based, at least in part, on statements that District Board members and representatives made to legislators and which were made for the purpose of encouraging the Legislature to review and approve the merger of HAD4 with MRH Corp. Despite this, the Court concludes that these statements do not constitute an activity which is protected by either the United States or Maine Constitutions.

As a matter of law, municipal corporations have no standing to invoke the protections of the Fourteenth Amendment against the State. *MSAD 6 Bd. of Dirs. V. Town of Frye Island*, 2020, ME 45, ¶ 38, ___ A.3d ___ (citing *Coleman v. Miller*, 307 U.S. 433, 441 (1939)). This is because municipalities are creatures of the state and "have no inherent right of self-government which is beyond the legislative control of the state." *Id.* ¶¶ 37-38. (quoting "*Trenton v. New Jersey*, 262 U.S. 182, 187 (1923)). The right to petition and express grievances to State Government is a right which is protected by the Fourteenth Amendment of the United States Constitution. *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963); *Nader*, 2012 ME 57, ¶ 21, 41 A.3d 551. The Maine Constitution similarly protects the right of "the people" to petition the State Government. Me. Const. art. I, § 15. Because neither the Fourteenth Amendment nor the Maine Constitution protect a right of municipal corporations to petition state government, HAD4's petitioning activities do not constitute "the exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine." 14 M.R.S. § 556; *Frye Island*, 2020, ME 45, ¶ 38. The District's special motion to dismiss must therefore be denied. *Desjardins v. Reynolds*, 2017 ME 99, ¶ 8, 162 A.3d 228.

**THE DEFENDANTS' MOTIONS TO DISMISS**

**Standard of Review**

"A motion to dismiss tests the legal sufficiency of the complaint." *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217. When reviewing a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the court "examine[s] the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244.

**Claims Under the Maine Constitution**

Counts I through III all allege that the Merger Legislation violates various provisions of the Maine Constitution. Specifically, Count I alleges that the Merger Legislation gives-away public funds for private use in violation of Me. Const. art IV, pt. 3, § 1. Count II alleges that the Merger Legislation violates Me. Const. art IV, pt. 3, § 16 (the "emergency legislation clause") because it is not immediately necessary for the preservation of the public peace, health or safety; because it infringes the right of home rule for municipalities; and because it gives away real estate for more than five years. Count III alleges that both the Merger Legislation and HAD4's actions in furtherance of the merge violate the home rule provision of the Maine Constitution, Me. Const. art. VIII, pt. 2, § 1.

**Count I.** Me. Const. art. IV, pt. 3, § 1 provides that "[t]he Legislature . . . shall have full power to make and establish all reasonable laws and regulations for the defense and

7

benefit of the people of this State . . . .". This clause requires that legislative spending be for a "public purpose." *Delogu v. State,* 1998 ME 246, ¶ 10, 720 A.2d 1153. Judicial review of whether legislation serves a public purpose is made pursuant to the rational basis test and court's will not consider the legislation's "wisdom or efficacy as a matter of economic or fiscal policy." *Common Cause v. State*, 455 A.2d 1, 25 (Me. 1983). "The weighing of [the legislation's] costs and benefits is for the Legislature in the first instance . . . ." *Id.*

Plaintiffs' allege that the merger does not serve a public purpose because the merger transfers property owned by a public entity—the District—to a private entity—EMHS. Plaintiffs also allege that the merger is not necessary to allow the continued operation of the hospital because the District is not insolvent or in danger of insolvency. The fact that a private entity is the recipient of public money, however, does not mean that the money is not being spent for a public purpose and a court may consider the incidental or indirect benefits of legislation when determining whether the legislation serves a public purpose. *Id.* at 24-26*; see also Delogu*, 1998 ME 246, ¶ 12, 720 A.2d 1153. The Law Court has also held that the expenditure of public funds for the provision of ambulance services satisfies the Maine Constitution's public purpose requirement. *Ace Ambulance Service, Inc. v. City of Augusta,* 337 A.2d 661, 666 (Me. 1975).

In this case, the incidental effect of the Merger Legislation is the provision of healthcare services and the Legislature authorized the merger to "ensure the continuation of the provision for the health, welfare and public benefit of the inhabitants of the district." (Compl. Ex. 6 at 2.) Legislation which provides access to healthcare services serves a legitimate public purpose. *Am. Republic Ins. Co. v. Superintendent of Ins.*, 647 A.2d 1195, 1197 (Me. 1994); *Ace Ambulance Service, Inc. v. City of Augusta,* 337 A.2d 661, 666 (Me.

8

1975); *see also Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 15, 769 A.2d 857. Although it is true that the hospital was in operation prior to the merger, the Court cannot second guess the "wisdom or efficacy" of the Legislature's determination that the merger is the best means of ensuring the continued provision of healthcare services to HAD4's inhabitants. *Common Cause*, 455 A.2d at 25. Given the facts alleged in the complaint—which the Court accepts as true—as well as the contents of the exhibits attached to the complaint, the Court concludes that the Merger Legislation is not, as a matter of law, irrational. *Id.* at 26; *Delogu*, 1998 ME 246, ¶ 16, 720 A.2d 1153. Consequently, Count I must be dismissed.

> **Count II.** The Maine Constitution provides in relevant part as follows:
>
> An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety; and shall not include (1) an infringement of the right of home rule for municipalities . . . or (3) provision for the sale or purchase or renting for more than 5 years of real estate.

Me. Const. art IV, pt. 3, § 16. Even if the Legislature was without constitutional power to pass the merger act as emergency legislation, however, the only effect would be to change the effective date of the legislation to the same date as all other non-emergency legislation. *Lemaire v. Crockett*, 116 Me. 263 (1917); Tinkle, *The Maine State Constitution* 101 at 99-100 (2d ed. 2013). That is to say, the remedy would be to change the effective date of the Merger Legislation to the date which was 90 days after the recess of the Legislature. *See* Me. Const. art IV, pt. 3, § 16 (stating that "[n]o Act or joint resolution of the Legislature . . . shall take effect until 90 days after the recess of the session of the Legislature in which it was passed . . . ."). Because this date has passed, the plaintiffs

9

cannot obtain any effective relief for their emergency legislation claim. Consequently, the claim is moot and must be dismissed.

**Count III.** Article VIII, pt. 2, § 1 of the Maine Constitution provides that "[t]he inhabitants of any municipality shall have the power to alter and amend their charters on all matters not prohibited by Constitution or general law, which are local and municipal in character." Plaintiffs allege that the Merger Legislation as well as the District's actions to further the merger violate this clause.

In this case, the District is comprised of several municipalities. Thus, matters affecting the District are not "local and municipal in character" because those matters also affect the inhabitants of municipalities other than the Town of Cambridge. *See MSAD 6 Bd. of Dirs. V. Town of Frye Island*, 2020 ME 45, ¶ 21 ("the fact that the financial commitments of other municipalities within MSAD 6 *could* be affected by the withdrawal is a strong indicator that the question of Frye Island's withdrawal is not solely 'local and municipal in character'"). The Merger Legislation therefore does not affect a matter over which municipalities have a right of home rule. Moreover, the complaint does not allege that the Merger Legislation alters, amends or otherwise affects the Town of Cambridge's charter and the Supreme Judicial Court has indicated that the constitution only confers the right of home rule to "true municipal corporations"—Cities and towns—not quasi-municipal corporations. *Opinion of the Justices*, 253 A.2d 309, 335-36 (Me. 1969). Consequently, the complaint fails to state a claim for infringement of the Town of Cambridge's right of home rule. Count III must be dismissed.

**Claims under the United States Constitution**

Plaintiffs raise the following claims pursuant to the United States Constitution. Count IV alleges that the Merger Legislation has deprived the taxpayer plaintiffs of property without due process of law. Count IX alleges that the Merger Legislation impairs contractual obligations in violation of the Contract Clause. Count X purports to bring a Section 1983 civil rights action seeking redress for a deprivation of Plaintiffs' "rights, privileges, [and] immunities secured by the Constitution and laws."

As a threshold matter the Town of Cambridge "has no basis in the United States Constitution for suing the State." *Frye Island*, 2020 ME 45, ¶ 21 (quoting *South Portland v. State*, 476 A.2d 690, 699 (Me. 1984)). Consequently, the Town has no standing to mount a constitutional challenge to the Merger Legislation. *Id.* ¶¶ 37-38.

**Count IV.** In order to maintain a due process claim, the Taxpayers must show that they have been deprived of a "cognizable property interest." *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 11, 802 A.2d 994. In this case, the Taxpayers due process claim is based on the Merger Legislation and associated acts in furtherance of the merger. As a matter of law, however, taxpayers do not have any property interest in property held by quasi-municipal corporations. *See Kelley v. Brunswick School Dist.*, 134 Me. 414, 420-21 (Me. 1936) ("School property is public property, the property of the incorporated district and not of the taxpayers residing within it"). Thus, because they have no property interests in the District, the Taxpayers cannot have suffered a deprivation of property due to the merger.[5] *See McGary v. Barrows*, 156 Me. 250, 266-67 (Me. 1960) ("Having no property

---

[5] The District also argues that because they have no property interest, the Taxpayers have no standing to raise any of the claims alleged in the complaint and that the complaint should therefore be dismissed.

interests at stake in the creation of the District, the plaintiffs cannot be said to have suffered a deprivation of property . . . ."). Accordingly, Count IV must be dismissed.

**Count IX.** Plaintiffs allege that a contract was created when the inhabitants of the Member Towns voted to join the District and assume a proportionate share of any outstanding indebtedness of the District. The creation of a public corporation, however, does not create a contract, *Canal Nat'l Bank v. School Administrative District No. 3*, 160 Me. 309, 339 (1964), and the language of the 1973 charter does not express any intent to create contractual rights between taxpayers and the District. *Spiller v. State*, 627 A.2d 513, 516-17 (Me. 1993). Without an expression of such intent, no contractual rights may be implied. *Id.* Because the facts of the complaint are insufficient to support the existence of a contract between the Taxpayer Plaintiffs and the District, Count IX must be dismissed.

**Count X.** 42 U.S.C.S. § 1983 provides that "[e]very person who, under color of any [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Count X identifies no purported constitutional right, privilege or immunity which is independent of the Taxpayer's due process and contract clause claims. Neither the facts alleged in the complaint nor the exhibits attached to the complaint implicate any fundamental right, privilege or immunity secured by the Constitution. Nor do the facts alleged in the complaint support a claim for disparate treatment in violation of equal protection. Consequently, Count X must be dismissed.

**Claims Under the 1973 Charter**

Plaintiffs allege the following three claims that seek enforcement of the 1973 Charter. Count V alleges that the District's Board had no authority to enter into the Second Merger Agreement and that the Board's approval of that agreement is therefore Ultra Vires. Count VI alleges that the dissolution procedure specified in the 1973 Charter is the only method of terminating the District's existence. Count VII alleges that the merger of the District and EMHS constitutes a dissolution of the District and that, consequently, all District property must be distributed among the Member Towns.

**Count V.** Plaintiffs allege that neither the 1973 Charter nor any of its amendments granted the Board the Authority to negotiate and merge with private entities. Even if it is true that the Board had no authority to negotiate or approve the Second Merger Agreement, however, there is no relief that is available. This is because it was the Legislature that ultimately approved the Merger Agreement and thus it was the Legislature, not the Board, which gave legal effect to the merger. Therefore, a declaration that the Board had no authority to approve the Second Merger Agreement would not change the legality of the merger. In order to invalidate the merger, Plaintiffs must instead show that the Legislative action was unlawful. Consequently, there is no "real and substantial controversy" concerning the Board's authorization of the Second Merger Agreement nor any practical effect which flows from that authorization. *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2011 ME 48, ¶ 7, 18 A.3d 824. Count V is therefore moot and must be dismissed. *Id.*

**Count VI and Count VII.** Section 11 of the 1973 charter provides as follows:

> The district may be dissolved only if all member towns and plantations agree to dissolve it by vote at legally constituted town or plantation

meetings in said such towns or plantations. If the hospital district has any outstanding indebtedness, it may not be dissolved.

In the event of dissolution of the hospital district, all property, real, personal or mixed, shall be marshaled and converted into cash in a manner to be determined by a majority vote of the board of directors and distribution shall then be made among the respective towns and plantations in proportion to their state valuations as herein set forth in this chapter.

(Compl. Ex 1. at 11.) The Plaintiffs argue that this provision provides the only method of terminating the District's existence and that the actions taken pursuant to the Merger Legislation constitute a dissolution pursuant to this provision.

Contrary to the Plaintiffs argument, the Merger Legislation authorizes the merger "[n]otwithstanding any provision of Private and Special Law 1973, chapter 76 as amended . . . ." (Compl. Ex. 6 at 2.) Due to its more recent enactment, the provisions of the Merger Legislation must prevail over inconsistent provisions of the 1973 Charter and its amendments. *See Senate v. Sec'y of State*, 2018 ME 52, ¶ 20, 183 A.3d 749 ("When a later statute does not cover the earlier act in its entirety, but is inconsistent with only some of its provisions, a repeal by implication occurs to the extent of the conflict."). Thus, to the extent that the dissolution procedure of the 1973 charter purports to provide the only method of terminating the District's existence, that procedure must yield to the more recently enacted Merger Legislation.

Moreover, even if the dissolution procedure specified in the 1973 Charter was the only method of terminating the District's existence, that procedure requires that all member towns agree to the dissolution. Because only twelve of the thirteen communities voted in favor of the merger, not all of the towns were in agreement. Therefore, the merger cannot

14

constitute a dissolution within the meaning of the 1973 Charter. Consequently, Counts VI and VII both fail to state a claim for relief and must be dismissed.

**Expenditure of Public Funds for a Partisan Position**

Count VIII is based on a number of Superior Court decisions which hold that "in the absence of clear and explicit legislative authorization, a public agency may not expend public funds to promote a partisan position in an electoral campaign." *See e.g. Adams v. Me. Municipal Ass'n*, 2014 Me. Bus. & Consumer LEXIS 32, at *7 (Dec. 15, 2014); *see also Mainers v. Me. Dep't of Inland Fisheries & Wildlife*, 2014 Me. Super. LEXIS 117, *9 (Oct. 22, 2014).

In this case, the complaint alleges all of the necessary elements to support a finding that the District has spent public money to promote a partisan position in an electoral campaign. In its motion to dismiss, the District argues that this claim should be dismissed because the District's advocacy is protected by the "government speech doctrine."

Although "an affirmative defense may be raised by a motion to dismiss if facts giving rise to the defense appear on the face of the complaint," *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 504 (Me. 1996), "whether the protections of the government speech doctrine are available . . . depends on the content of the challenged speech and the legal theory argued by the challenger." *Adams*, 2014 Me. Bus. & Consumer LEXIS 32, at *13 (quotation omitted). Given the limited record available at this juncture, the Court is unable to determine whether the protections of the government speech doctrine would prevent the Plaintiffs from obtaining relief on this claim. The Court therefore concludes that Count VIII states a claim for relief and that the Defendants' motions must be denied with respect to this claim.

**Requests for Injunctive Relief**

Count XII contains a request for a temporary restraining order. Count XIII requests a preliminary injunction. Both requests seek to enjoin the merger of EMHS and HAD4.

> A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating to the court that four criteria are met. The moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction.

*Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129. "Failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied." *Id.* ¶ 10.

Notwithstanding the fact that all but one of Plaintiffs' claims fail to state a claim for relief, the irreparable harm identified by the Plaintiffs is the loss of HAD4 assets. Such a loss may be remedied by money damages and is therefore not irreparable. *See Id.* ("'Irreparable injury' is defined as injury for which there is no adequate remedy at law") (quotation omitted). Moreover, even if Plaintiffs could show that they would be irreparably harmed by the merger, Plaintiffs have not shown that the public interest will not be adversely affected if the injunction were granted. As discussed above, the purpose of the merger is to "ensure the continuation of the provision for the health, welfare and public benefit of the inhabitants of the district." Because an injunction would prevent the Defendants from taking the steps necessary to ensure the continued provision of these benefits to the public, the public interest will be adversely affected if the injunction is granted.

For these reasons, the Court denies Plaintiffs' requests for injunctive relief.

**PLAINTIFFS' MOTION FOR DISCLOSURE**

On June 1, 2020 the Court held a scheduling conference during which Plaintiffs made an oral motion for a disclosure of Attorney General Frey's role in this case. At the Court's direction, Plaintiffs subsequently filed a written motion captioned "Motion for Disclosure of Facts by Maine Attorney General and Defense Counsel." In their motion, Plaintiffs seek disclosure of communications between Attorney General Frey, Legislators, EMHS, and HAD4 regarding this litigation. Plaintiffs also seek information concerning Attorney General Frey's personal involvement in this litigation and whether he has recused himself from involvement in this litigation.

The Court has reviewed the motion for disclosure, and the oppositions. The Court is satisfied that Attorney General Frey recused himself from this case at an appropriate time, that notice of this recusal has been provided to the Plaintiffs. Further, Plaintiffs state that they are not accusing the Attorney General of misconduct. Given the foregoing, and to the extent Plaintiffs are seeking further disclosure, the Court denies the motion as it appears the Attorney General's ethical obligations are not an issue in this litigation.

**CONCLUSION**

The entry is:

Defendant Hospital Administrative District No. 4's Special Motion to Dismiss is DENIED

17

Defendant Hospital Administrative District No. 4's, Defendant Eastern Maine Healthcare Systems's, Defendant Jeanne Lambrew and Defendant State of Maine's Motions to Dismiss are GRANTED-IN-PART and DENIED-IN-PART. Counts I, II, III, IV, V, VI, VII, IX, X, XII and XIII of Plaintiffs' Complaint are DISMISSED.

Plaintiffs Motion for Disclosure is DENIED

The Clerk shall note this Order on the Docket by reference pursuant to Rule 79(a) of the

Maine Rules of Civil Procedure.

Date:___July 24, 2020___                    _____/s_____
                                            M. Michaela Murphy
                                            Justice, Superior Court

**THE INHABITANTS of the TOWN
of CAMBRIDGE, et al.**


**v.**


HOSPITAL ADMINISTRATIVE
DISTRICT NO. 4, et al.




The Inhabitants of the Town
of Cambridge, et al

Gerald Nessmann, Esq.
Beth Seaney, Esq.
 **Austin Law Offices, PC**
 86 Church St
 Dexter,  Me 04930




Hospital Administrative
District No. 4, MRH Corp., et al.

John Aromando, Esq.
Sara Murphy, Esq.
 **Pierce Atwood**
 Merrills Warf
 254 Commercial, St
 Portland, ME 04101




Jeanne Lambrew

Jonathan Bolton, AAG
 **Attorney General Office**
 11 Sewall St
 6 State House Station
 Augusta, ME 04333-0006